UNITED STATES of America,
Plaintiff-Appellee,

v.

Lloyd W. SAHLEY,
Defendant-Appellant.

No. 74–3991.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1976.

---

Patrick M. Sigler, Mobile, Ala. (Court-appointed), for defendant-appellant.

Charles S. White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., William R. Favre, Jr., Asst. U. S. Attys., Mobile, Ala., for plaintiff-appellee.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Lloyd W. Sahley was tried before a jury on a seven count indictment, each count of which charged that he made a material false financial statement to a federally insured bank, for the purpose of influencing the action of the bank to approve a loan submitted by him, in violation of Title 18, U.S.C., Section 1014.[1]

---

1. § 1014. *Loan and credit applications generally; renewals and discounts; crop insurance*

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of the Reconstruction Finance Corporation, Farm Credit Administration, Federal Crop Insurance Corporation, Farmers' Home Corporation, the Secretary of Agriculture acting through the Farmers' Home Administration, any Federal intermediate credit bank, or any division, officer, or employee thereof, or of any corporation organized under sections 1131–1134m of Title 12, or of any regional agricultural credit corporation established pursuant to law, or of the National Agricultural Credit Corporation, a Federal Home Loan Bank, the Federal Home Loan Bank Board, the Home Owners' Loan Corporation, a Federal Savings and Loan Association, a Federal land bank, a joint-stock land bank, a Federal land bank association, a Federal Reserve bank, a small business investment company, or a Federal credit union, upon

He was found guilty on three counts, Counts Four, Five and Seven, and acquitted as to Counts One, Two and Three. Count Six was dropped by the government. He was adjudged guilty and sentenced to one year in prison for each of the counts upon which he was convicted, the sentences to run consecutively. On this timely appeal from that judgment of guilty, we affirm the conviction, but vacate the sentence and remand for resentencing.

The evidence shows that on July 16, 1973, Sahley, representing himself to be "William George", met with George Hardesty, the senior vice president of the Merchant's National Bank, Mobile, Alabama, to obtain a loan to purchase the Town House Motel in Mobile. Mr. Hardesty had Mr. "George" fill out a personal financial statement prior to approval of the loan. All the charges here involved were based on that financial statement. In the financial statement Sahley asserted, *inter alia*, that he: was not a defendant in any suits or legal actions (Count Four), had investments in Laurels County Country Club in Monticello, New York, worth $640,000 (Count Five), and that his name was William George (Count Seven). Mr. Hardesty granted appellant a loan for $78,000. Sahley defaulted on payments under the loan in May, 1974. The information included in the financial statement was discovered to be false, and Sahley was indicted for these falsifications.

Sahley's appeal raises two major points of error. He first contends that the financial statement was improperly received in evidence, because the subpoena directed to the bank for its production issued without probable cause and was an "unreasonable search" for Fourth Amendment exclusionary purposes. His second contention is that the denial of his attorney's motion for a continuance

violated his constitutional right to a fair trial inasmuch as he was forced to trial without sufficient time for preparation of his case. We conclude that neither point warrants reversal.

Additionally Sahley attacks the sentences imposed of one year on each of the three counts under which he was convicted, to run consecutively. He argues that the imposition of the consecutive sentences based on a single false document impermissibly constituted multiple punishment for one crime. Agreeing, we vacate the sentence and remand for resentencing.

## I. *The Financial Statement.*

With reference to the claim that error occurred in the admission in evidence of the financial statement on which the charges were based, the argument is on two inter-related levels. Appellant urges (1) that the grand jury subpoena was invalid, as issued without probable cause; and (2) that primarily because of the illegal subpoena, the introduction of the statement in evidence was an illegal search, and a violation of appellant's Fourth, and perhaps Fifth Amendment rights.

Appellant's basic premise—that a subpoena may issue from a grand jury only for probable cause—is without legal foundation. The grand jury is an investigative body, and the mandate under which it operates is broad indeed. See *United States v. Bisceglia*, 1975, 420 U.S. 141, 146–147, ·95 S.Ct. 915, 919, 43 L.Ed.2d 88, 93–94. The grand jury's investigation is directed at determining whether probable cause for criminal charges exists. In the course of this determination that body must work with something less than probable cause. See *Blair v. United States*, 1919, 250 U.S. 273, 39 S.Ct. 468, 63 L.Ed. 979. Mere

any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, or loan, or any change or extension of any of the same, by renewal, deferment of action or otherwise,

or the acceptance, release, or substitution of security therefor, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

suspicion that a crime is being committed is sufficient reason for a grand jury to issue a subpoena. Indeed, a desire simply to assure itself a crime is not being committed will suffice. *Bisceglia, supra,* 420 U.S. at 148–149, 95 S.Ct. at 920, 43 L.Ed.2d at 94–95.

We refrain from reiteration of the holdings of numerous cases that a bank customer has no standing to challenge a subpoena from IRS directed to a bank for production of its records of dealings with him. See, e. g., *Harris v. United States,* 9 Cir. 1969, 413 F.2d 316; *Galbraith v. United States,* 10 Cir. 1968, 387 F.2d 617; *O'Donnell v. Sullivan,* 1 Cir. 1966, 364 F.2d 43, cert. denied 385 U.S. 969, 87 S.Ct. 501, 17 L.Ed.2d 433. "We decided long ago that an Internal Revenue summons directed to a third-party bank was not a violation of the Fourth Amendment rights of either the bank or the person under investigation by the taxing authorities". (citations omitted) *California Bankers Association v. Shultz,* 1974, 416 U.S. 21, 53, 94 S.Ct. 1494, 1513, 39 L.Ed.2d 812, 835. Grand jury subpoena powers in this situation may be analogized to those of the IRS. *United States v. Bisceglia, supra,* 420 U.S. at 141, 95 S.Ct. at 915, 43 L.Ed.2d at 88.

Appellant cites two cases as compelling authority for reversal. We examine their import and distinguish them. The two cases relied upon are *United States v. Miller,* 5 Cir. 1974, 500 F.2d 751, rehearing en banc denied 1975, 508 F.2d 588 (seven judges dissenting with reasons assigned), cert. granted 421 U.S. 1010, 95 S.Ct. 2414, 44 L.Ed.2d 678,[2] and a California case, which cites *Miller* favorably, *Burrows v. Superior Court of San Bernardino County,* 1974, 13 Cal.3d 238, 118 Cal.Rptr. 166, 529 P.2d 590. In *Miller,* the subpoena by which the government originally acquired the copies of personal checks from the bank was issued by the United States Attorney in the name of a grand jury which was not then in session. A primary tenet of *Mil-*

ler is that, based on *California Bankers Association v. Shultz, supra,* access to an individual's bank records is to be controlled by legal process, and that "a purported grand jury subpoena, issued not by the court or by the grand jury, but by the United States Attorney's office, for a date when no grand jury is in session, . . . does not constitute sufficient 'legal process' within the meaning of [*California Bankers Association v. Shultz*]." *United States v. Miller, supra,* 500 F.2d at 757–758. In the California case, *Burrows,* the bank's records of the individual's financial transactions were voluntarily delivered to the prosecution by the bank; no process at all was involved. In contrast to the situations in *Miller* and *Burrows,* Sahley's bank records, including the financial statement, were subpoenaed by a grand jury in session. Incontestably then, the financial statement first came to the government's attention by way of *bona fide* "existing legal process".

Additionally, the information which the defendants sought to suppress was, in the *Miller* case, copies of personal checks, and, in *Burrows,* personal checks and other personal financial records. The bank obtained these records because of the logistics of modern economic transactions, and the defendant retained an interest which *Miller* and *Burrows* hold to be a quasi-ownership or privacy, personal interest. Cf. *Katz v. United States,* 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. A man's private papers may, of course, be the subject of an unreasonable search and seizure. *Boyd v. United States,* 1886, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746. In contrast the financial statement in this case was voluntarily furnished by Sahley to enable the bank to evaluate his qualifications for the large loan he sought. The information contained therein was not personal to Sahley at that point. It did not come into the bank's possession in a merely logistical, administrative manner. It

---

**2.** *Miller* was orally argued before the Supreme Court the week of January 12, 1976. See Vol.

18, Cr.Law.Rep. No. 14, page 4121, 44 U.S. L.W. 3377.

was furnished by Sahley for the bank's use, and he had no cognizable privacy interest in it such as that recognized in *Katz, supra*. "[I]t is difficult to see how the summoning of a third party, and the records of a third party, can violate the rights of the taxpayer, even if a criminal prosecution is contemplated or in progress". *Donaldson v. United States*, 1971, 400 U.S. 517, 537, 91 S.Ct. 534, 545, 27 L.Ed.2d 580, 593, (Douglas, J., concurring), quoted in *California Bankers Association v. Shultz*, 416 U.S. 21, 53, 94 S.Ct. 1494, 1513, 39 L.Ed.2d 812, 835.

## II. *The Denial of a Continuance of Trial.*

Sahley contends that it was an abuse of discretion for the trial judge to deny him a requested continuance in order to permit him to prepare more fully for trial. He asserts that his Sixth Amendment rights were violated when he was forced to go to trial little more than a month following appointment of his attorney.

Understanding of this issue requires us to set the circumstances in perspective. From the time of his indictment until immediately prior to the time this case was first set for trial, September 30, 1974, appellant was represented by private counsel. On September 24, 1974, appellant's attorneys moved to withdraw as counsel, apparently because of dissatisfaction with non-payment for their services. This motion was denied on the ground that it was made too near the date scheduled for trial. On September 27, 1974, appellant and his attorneys appeared together before the trial judge and renewed the motion that the attorneys be permitted to withdraw. The court granted this motion, and postponed the trial date until November 18, 1974. The court immediately thereafter appointed counsel for the appellant. On October 15, the counsel initially appointed was permitted to withdraw from the case by reason of an asserted conflict of interest, and the ultimate trial counsel (and counsel on appeal) was immediately appointed. In an order dated November 5, 1975, granting appellant's counsel the right to travel to New Orleans at government expense to peruse certain documents[3] and the right to make long distance phone calls at government expense to three states in which the defendant conducted business, the court called "to the attention of the defense counsel Court's admonition to the defendant at the last setting of this case

---

**3.** The F. B. I. held perhaps as many as 80,000 documents belonging to Sahley in New Orleans. These documents and records of Sahley's business dealings were suspected by the defense to be relevant as evidence in this case. Appellant's attorney spent a day attempting to sift through the documents, but apparently found nothing he then recognized as valuable. Although one of his arguments at trial in support of a continuance, renewed on appeal, was that he had insufficient time to fully explore the documents, and indeed was not even certain what he was looking for at the time of the search (due in part to his not having yet met with his client, who was at the time in a California jail), it is significant that he made no request to return to re-examine the documents after meeting with his client, prior to trial. Further, there is still no contention made that any particular document in New Orleans was needed to prepare appellant's defense.

The documents are claimed to be an issue on appeal, in another capacity. On June 27, 1974, prior to the indictment of appellant in this case, an attorney who had represented him in business transactions (but was in no way associated with this case) appeared before a federal grand jury in New Orleans and turned over to the grand jury voluminous files and documents given him by Sahley. It may well be that this attorney violated appellant's attorney-client privilege. This question is irrelevant to this appeal and need not concern us at this time. Extensive in-camera hearings were held by the district court before trial during which it was determined by testimony of the F. B. I. agents involved in investigations of Sahley's affairs that the New Orleans investigation was independent of that in Mobile, and that no information from the New Orleans grand jury had ever been used by either the Mobile office of the F. B. I. or the United States Attorney in Mobile. The Mobile investigation of Sahley by the F. B. I. arose independently of that in New Orleans and was conducted separately in all respects.

The district court in our view handled this matter properly. We conclude that any question of the admissibility of evidence allegedly obtained in violation of the attorney-client relationship is not relevant here.

where his privately retained counsel sought and obtained release from the defense that the defendant was at that time advised that the case would be tried without fail at the next setting, to-wit November 18, 1974, and that the Court would accept no further excuse that the defendant's counsel was not advised in preparation for defense inasmuch as the Court was of the opinion based on the statements made at that time that the defendant had failed or refused to cooperate with his attorneys in enabling them to prepare for his defense in the first setting and that it constituted a ruse or device on his part to secure a continuance".

■ The parties agree that a motion for a continuance is addressed to the sound discretion of the trial judge, and his decision will be overturned on appeal only for an abuse of that discretion. See, e. g., *McKinney v. Wainwright*, 5 Cir. 1974, 488 F.2d 28. Although in some instances the courts have determined the time period to be so short between the time of appointment of counsel and trial that the defendant was denied his Sixth Amendment right to counsel and due process rights, there is no constitutionally proscribed time period.[4] "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied". *Ungar v. Sarafite*, 1964, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921, 931. Under the circumstances of this case, and considering the situation presented to the trial judge, we are not prepared to say that his decision was arbitrary or an abuse of discretion. This contention fails.

### III. *The Sentence*

■ Although we here affirm Sahley's conviction, we must vacate his sentence, and remand for re-sentencing. A single offense may be punished but once. Sahley, although convicted of making three false assertions, made them on but a single document, submitted to acquire a single loan. The statute under which he was convicted punishes the making of "any false statement or report". The false statement in this case constituted a single transaction, and as such is not divisible for the purposes of sentencing. Our analysis and decision are governed by analogy to *Bell v. United States*, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905. There the appellant had been sentenced on each of two counts charging Mann Act violations. The two counts were based on the simultaneous transportation of two women in a single trip from one state to another. The court stated that Congress has the power to define "what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit". 349 U.S. at 83, 75 S.Ct. at 622, 99 L.Ed. at 910. "[I]f Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." *Id.* at 84, 75 S.Ct. at 622. See also, *McFarland v. Pickett*, 7 Cir. 1972, 469 F.2d 1277; *United States v. Deaton*, 5 Cir. 1972, 468 F.2d 541; *United States v. Carty*, 5 Cir. 1971, 447 F.2d 964. The statute in this instance speaks of "statement" and "report" in a manner which will not support a fracturing of the offense according to the number of false allegations in a single financial statement.

---

**4.** See, e. g., *United States v. Helwig*, 3 Cir. 1947, 159 F.2d 616, in which the appointment of counsel one minute before trial was held to deny the defendant his Sixth Amendment rights; *Ray v. United States*, 8 Cir. 1952, 197 F.2d 268, in which the court refused to say as a matter of law that 1½ days was too short a time period between appointment of counsel and trial; *Eubanks v. United States*, 9 Cir. 1964, 336 F.2d 269, in which the court refused to reverse solely on the basis of an 11 day period between appointment of counsel and trial.

The conviction is therefore affirmed as to the merits of the appeal. The sentence is vacated, and the cause is remanded with directions to the district court to resentence as for a single violation of the statute.

Affirmed as to merits of the appeal; sentence vacated and case remanded for resentencing.