**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sheldon ROTHMAN and Robert G.
Moseley, Defendants-Appellants.**

**Nos. 76–2270 and 76–2294.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1977.

Decided Dec. 28, 1977.

Gerald Murray, Edward M. Genson, Jeffrey B. Steinback, Chicago, Ill., for defendants-appellants.

Thomas P. Sullivan, U. S. Atty., Scott R. Lassar, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SPRECHER, Circuit Judge, COWEN, Senior Judge,* and WOOD, Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Sheldon Rothman and Robert G. Moseley after trial by jury were found guilty of mail fraud in violation of Title 18, United States Code, § 1341. Other defendants are not involved in this appeal.

The facts may be briefly summarized. Moseley and two others established Daily Auto Rental Service, the stated purpose of which was to provide low cost rental automobiles at automotive repair shops for temporary use by customers of the shops. Territories were to be established under a franchise arrangement. The essence of the alleged scheme to defraud was that knowing misrepresentations were made to prospects to induce them to purchase franchises. For this purpose Moseley, it was claimed, among other misrepresentations made use of false financial reports, and Rothman served as a reference to misrepresent to prospective purchasers of franchises that he was a successful franchise operator, which he was not.

On appeal Rothman raises two and Moseley five issues.

## I.

Prior to trial, Rothman moved to dismiss the indictment as to him on the basis that the government violated its promise to grant him immunity. There were negotiations, some verbal, some in writing between the government and Rothman prior to trial concerning possible immunity. There is no need to factually set forth the details of those negotiations. They clearly demonstrate that the government was considering immunity for Rothman, but first desired to know what evidence Rothman had to deliver in exchange. After Rothman briefly revealed what he had to offer, the government declined to immunize Rothman. The government had agreed, however, as a preliminary matter not to use against Rothman any informa-

---

* The Honorable Wilson Cowen, Senior Judge of the United States Court of Claims, is sitting by designation.

tion or leads arising from what Rothman might reveal during negotiations. It is not claimed that that agreement was violated. Rothman argues that since the government received the substance of the testimony he could offer by which he demonstrated his willingness to cooperate, the government was bound to grant him immunity. Rothman misinterprets the negotiations and their result. Immunity was only a possibility with the final decision to be made by the government after evaluating the testimony Rothman offered. By merely making the proffer, Rothman could not thereby bind the government. His offer was not accepted. Rothman would have us abandon the usual accepted concepts of applicable contract law and fashion some new standard for these circumstances. We decline, for to do so would unnecessarily destroy immunity as a useful prosecutorial technique.

## II.

Moseley complains that the trial judge abused his discretion in failing to grant Moseley's motion for a continuance on the basis that inadequate time was allowed for trial preparation. The timing was as follows:

July 20, 1976—Indictment returned.

August 10, 1976—Moseley, without counsel, pleaded not guilty.

August 17, 1976—Counsel was appointed for Moseley and trial was set for September 27, 1976.

September 7, 1976—Numerous pretrial motions and memoranda were filed.

September 10, 1976—Court ruled on the pretrial motions.

September 22, 1976—Defendant's counsel moved for a continuance, which was denied.

September 28, 1976—Trial of case began and was concluded about three and one-half weeks later.

Thus, it appears that defendant's counsel had about six weeks to prepare for what he labels a complex white collar fraud case made more difficult because his client lived out of state and investigative funds were lacking. In further support of the motion for a continuance, defense counsel set forth that he had not yet had the opportunity to interview any of the prospective witnesses, and was hampered by the press of other business.

Defendant's counsel argues that it is obvious that the Speedy Trial Act of 1974 was not written with the rights of defendants in mind.[1] Experience has shown that the Act sometimes causes problems for prosecutors and courts, but we see no need for the purposes of this case to dwell on those arguments.

The parties agree that a ruling denying a motion for a continuance is not subject to review unless there is a clear showing of an abuse of discretion or that a manifest injustice would result. *United States v. Collins*, 435 F.2d 698, 699 (7th Cir. 1970), *cert. denied*, 401 U.S. 957, 91 S.Ct. 983, 28 L.Ed.2d 241 (1971). It has likewise long been recognized that there are no mechanical tests to be applied and that "[t]he answer must be found in the circumstances [of] each case, particularly in the reasons presented to the trial judge." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964).

At the argument on the motion for a continuance, the trial judge stated that he did not see anything complex or difficult about the case since it was a case of selling auto rental franchises using false representations and the government had laid out what the representations were and who had made them. Defendant's counsel conceded that he was not contesting the complexity of the case. Defense counsel also argued that he was handicapped because his client resided out of state and was without funds to come to the district for preparation. The court suggested that there was a way to arrange to have the defendant, then admitted to bail, present in the district without expense to him but neither court nor counsel considered that remedy to be appropriate or necessary in this case, nor do we.

1. Speedy Trial Act may be found at 18 U.S.C. § 3161, *et seq.*

Counsel also generally argued the press of other business stating that his "preparation of this case will not be completed for several months." The trial judge in denying the motion also took into consideration the other commitments of court and counsel.

The defendant refers us to *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case the complaint was that there had been too many continuances, and thus the defendant had been denied a speedy trial. *Wingo* recognized that there were differences between the accused's right to speedy trial and other constitutional rights as deprivation of that right may work to the accused's advantage. Delay is not an uncommon defense tactic. That case was concerned with what was too long a time, not what was too short a time. In neither situation can permissible time be determined with precision. It cannot "be quantified into a specific number of days or months," but it is a system, the court says, that is supposed to be swift but deliberate. 407 U.S. at 521, 523, 92 S.Ct. at 2188.

We have examined the other Supreme Court cases cited by Moseley: *Hawk v. Olson,* 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); *White v. Ragen,* 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1944); *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); and *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1939), but find them not decisive of the present case since all those cases recognize that the decision as to whether or not the denial of a continuance is so arbitrary as to violate due process depends "on the facts." The circumstances in each case must contain the answer. In *Hawk v. Olson, supra,* the defendant was charged with murder and was without counsel until jury selection began. *Powell v. Alabama, supra,* is an unusual case in which no counsel was named until the morning of trial, but even then representation remained indefinite. *Avery v. Alabama, supra,* involved a defendant convicted for murder who was forced to trial two days after his arrest and the appointment of counsel. Again the case is easily distinguished on the facts, but the balancing rule

applied by that Court assists with the consideration of the present case:

Since the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the fact, standing alone, that a continuance has been denied, does not constitute a denial of the constitutional right to assistance of counsel. In the course of trial, after due appointment of competent counsel, many procedural questions necessarily arise which must be decided by the trial judge in the light of facts then presented and conditions then existing. Disposition of a request for continuance is of this nature and is made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed.

But the denial of opportunity for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the Constitution's requirement that an accused be given the assistance of counsel. The Constitution's guarantee of assistance of counsel cannot be satisfied by mere formal appointment. (308 U.S. at 446, 60 S.Ct. at 322).

Moseley also cites other cases including *Rastrom v. Robbins,* 440 F.2d 1251 (1st Cir. 1971), *cert. denied,* 404 U.S. 863, 92 S.Ct. 53, 30 L.Ed.2d 107; *United States v. Fisher,* 477 F.2d 300 (4th Cir. 1973); *Moore v. United States,* 432 F.2d 730 (3rd Cir. 1970); *United States v. Miller,* 508 F.2d 444 (7th Cir. 1974); and *Castaneda-Delgado v. Immigration & Naturalization Service,* 525 F.2d 1295 (7th Cir. 1975), but these are extreme cases of little assistance. *United States v. Harris,* 436 F.2d 775 (9th Cir. 1970), is cited for the proposition that the effort expended by defense counsel prior to seeking a continuance is a factor to be considered. No suggestion is made or intended that counsel for Moseley did not expend considerable prior effort in this case, yet counsel states that even known available witnesses were not interviewed during the five-week period preceding the motion. On the present rec-

ord, we afford little weight to the "press of other business."

■ From the cited cases, counsel draws various criteria to be considered in passing on continuances. Some criteria found in those cases, but without illumination in this record, include the experience of appointed counsel and the extent of counsel's knowledge and participation in similar cases. Even though the matter of a continuance may have been previously mentioned in earlier proceedings, no motion was filed until one week before trial. If the problems were as apparent as counsel argues, the need for the continuance should have been obvious early in the period, and therefore the motion for a continuance could have been more timely in those circumstances. It may be difficult to determine, but the record does not suggest that the denial of the continuance at a time when there was still an additional week remaining to prepare for trial adversely affected the competency of the representation rendered Moseley. No specific evidence is suggested that would have been offered had there been more time, only that there might have been something. Only the most general and vague suggestions, "several months," were made to the trial court about the additional time desired. Nor does the length of the trial itself always directly reflect upon the time necessary for preparation. Short trials may require more preparation than long ones. In the present case the discovery provided by the government was prompt and extensive, the issues were not complex, and there was a reoccurring pattern in the evidence.

It can also be noted that Moseley's defense was good faith. That defense as distinguished from other defenses, would seemingly depend to a large extent on the defendant himself, in that he would claim to have believed in the false representations which the evidence showed he made. That defense would not require as much time to search out other witnesses, since the principal witness to support that defense would probably be the defendant himself. However, as was his right, Moseley did not testify.

The government cites *United States v. Sahley*, 526 F.2d 913 (5th Cir. 1976), which sanctioned one month's preparation for trial on the charge of making false statements to a bank in a loan application, but that less extensive case also may be distinguished on its facts, which limits its usefulness in the present case.

■ In our view the trial court fully weighed and considered the matter of the continuance and we find no abuse of discretion. The trial court had very promptly ruled on all pretrial motions so that no loss of preparation time can be charged to any uncertainty resulting from any delay attributable to the court. We note also that the record reveals no application for the funds provided for indigents under 18 U.S.C. § 3006A(e). The necessary expeditious disposal of criminal cases requires the most effective use of the time permitted for trial preparation without reliance upon the routine continuances that may have been customary in the past.

### III.

Moseley next argues that the trial court erred in allowing a co-defendant to introduce evidence which incriminated Moseley. One franchise victim, John Switzer, when he was considering purchasing a franchise, first met with Moseley, and subsequently with another defendant, Herschell Lewis, the president of the company. Switzer testified that he was given a list of fraudulent franchise references by Lewis, which was denied by Lewis. The testimony objected to by Moseley was the opinion of a handwriting expert called by Davis who testified that the list was written by Moseley, not Lewis. Moseley had offered to stipulate that the list was not Lewis' handwriting as an effort to permit Lewis to exculpate himself without shifting the onus of the fraudulent list to Moseley. Moseley would in-

voke Rules 401[2] and 403[3] of the Federal Rules of Evidence to exclude the evidence as to authorship of the list as not being relevant, but if relevant, then on the basis that its relevancy was outweighed by its prejudicial effect on Moseley.

■ We see no merit in Moseley's argument. The evidence of authorship of the fraudulent list was relevant to Moseley's participation in the scheme. Similar evidence was equally available to the government and could have been properly offered by the government without valid objection. Its admission was prejudicial to Moseley but not unfairly so. The fact that the particular evidence came as part of a co-defendant's defense did not affect its relevancy, nor cause it in this case to be unfairly prejudicial. No claim is made that the defenses of the defendant were antagonistic or conflicting.

## IV:

■ Rothman claims the trial court erred in failing to grant Rothman a mistrial predicated on the government's prejudicial closing argument. First, certain evidence admitted for a limited purpose as to another defendant was misused in final argument by the government. We find no error not corrected promptly by the trial court. At the time of the admission of the evidence, the jury was instructed as to its limited use. When a reference to the evidence beyond the limited scope of its admission was made by government counsel in final argument, the trial judge, upon objection, struck the comment. Later, in the final instructions, the jury was told that what had been stricken could not be considered. Further, the jury was instructed as to the limited purpose of final arguments. We find no error.

■ Next, Rothman contends that on two occasions in final argument government counsel argued personal beliefs. The first was a general statement about believing the government had met its burden of proof, which was objected to and stricken. The second was to the effect that the case against Rothman was the "strongest case we have" and was permitted to stand over a general objection. This statement was immediately followed by a comment about telephone numbers, which we also consider below. The objection followed the latter comment. We view the "strongest case" remark only as a vague general statement rather than a clear statement of the prosecutor's personal belief as to the credibility of a witness, or suggesting superior knowledge available to the government. In that isolated remark tempered by the totality of the court's instructions, we see no reasonable possibility "that lay jurors may be misdirected from properly weighing the evidence by the implicit invitation to adopt the evidentiary assessment of the attorney." *United States v. Grooms*, 454 F.2d 1308, 1312 (7th Cir. 1972), *cert. denied*, 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103. The jurors were fully instructed that only they were to determine the facts and that even if they might think that the trial judge himself harbored some opinion as to the facts that too was to be disregarded.

■ Finally, Rothman argues that on three occasions during final argument, the government commented upon Rothman's failure to testify in violation of the Fifth Amendment and 18 U.S.C. § 3481. The first statement was

> Government: Now a review of the evidence in this case reveals that almost all the defendants seem to admit that a scheme to defraud existed.

**2.** Rule 401, Federal Rules of Evidence, provides:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**3.** Rule 403, Federal Rules of Evidence, provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

An objection was made and the jury was promptly and fully advised that none of the defendants had admitted anything and that the government was obliged to prove every element of the charge beyond a reasonable doubt. Rothman concedes that at most it was only an oblique reference. No direct reference was made to Rothman or his decision not to testify. In the objection which was made, it was not suggested to the court that the basis of the objection was an implicit reference to Rothman's failure to testify, only that Rothman had admitted nothing.

The second statement was

Government: The defendant Rothman can't get around his telephone numbers.

This comment immediately followed the "strongest case" comment we mentioned above and was the object of the one general objection.

The third statement was

Government: The defendant Sheldon Rothman argues that he never would have told Harvey Wilkinson, September of 1973, or John Switzer, in August of 1973, that he had a successful DARS franchise.

Rothman's objection to this comment was sustained.

■■■ The last two comments require the most strained interpretations in order to view them even as oblique references to the defendant's failure to testify. Rather, the first statement may be more fairly viewed as a comment on the lack of evidence, not a failure of the defendant to testify. Rothman would have us first interpret the comment to imply the same as "the evidence is uncontradicted," and then have us find it to be a comment upon Rothman's decision not to testify. It has not been demonstrated or argued that only Rothman and no one else could dispute the particular evidence. The second comment, in context, may also be more fairly viewed as a comment on the defense Rothman's counsel had attempted to develop by the cross-examination that the witnesses had not spoken to Rothman but to someone else. Rothman would have us view this as a similar comment since it

referred to an "argument" that Rothman could not have made because he did not testify.

Though prosecutor's comment on a defendant's failure to testify is forbidden, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), this was not such a case. In *Chapman, supra*, by contrast with the present case, the prosecutor filled "his argument to the jury from beginning to end with numerous references to their silence and inferences of their guilt resulting therefrom." The trial court also charged the jury that it could draw adverse inferences from petitioner's failure to testify. However, even though a reference may be much less direct or explicit and no particular objectionable words or phrases are used, it may still be reversible error if the argument was manifestly intended to convey or would have naturally conveyed an improper insinuation to the jury. *United States v. Fearns*, 501 F.2d 486 (7th Cir. 1974); *United States v. Handman*, 447 F.2d 853 (7th Cir. 1971). In context, the particular comments, individually or together, cannot be reasonably viewed as erroneous comments or insinuations justifying reversal. The court further instructed the jury that the defendant had an absolute right not to testify and that no presumption or inference of guilt should be drawn from the failure of a defendant not to testify. If reversible errors were to be found in such subtle nuances as Rothman claims to see in the final argument, arguments would be so artificially and unnecessarily chilled as to cause them to lose their usefulness and vitality. We are persuaded there was no error. We also note that the closing argument of counsel for one of Rothman's co-defendants explored in some depth the issue of failure to testify. Counsel for a co-defendant called the jury's attention to the fact that his client had not testified, but argued the jury was not "entitled to conclude that because he didn't talk, he must have something to hide."

V.

It is argued by Moseley that the court's failure to give the tendered good faith in-

structions deprived the defendant of his major theory of defense. The refused instructions would have specifically set forth in a separate instruction that good faith was a complete defense to mail fraud allegations and that if the jury concluded that Moseley was acting in good faith with no intent to defraud, he should be acquitted. It is not disputed that good faith is a defense to the charge and that the defendant is entitled to have the jury consider any theory of defense which is supported by law and which has some foundation in the evidence, however tenuous, *United States v. Bessesen*, 445 F.2d 463 (7th Cir. 1971), *cert. denied*, 404 U.S. 984, 92 S.Ct. 448, 30 L.Ed.2d 368; *United States v. Vole*, 435 F.2d 774, 776 (7th Cir. 1970); *United States v. Grimes*, 413 F.2d 1376, 1378 (7th Cir. 1969).

 The government argues that considering the instructions as a whole the jury was adequately instructed upon Moseley's theory of defense. We agree. The jury was fully instructed on the elements of the crime which the government was required to prove beyond a reasonable doubt to overcome the presumption of innocence. The instructions made it plain that the government had the burden of proving beyond a reasonable doubt that a defendant purposely and voluntarily intended to deceive, defraud and cheat before a defendant could be found guilty, but that if the acts of a defendant were the result of mistake, accident or were in good faith, then the defendant was to be found not guilty. The jury was further instructed that ignorance of the falsity of the representations was also a defense if the jury believed a defendant exercised reasonable diligence and yet remained ignorant of the falsity. The trial court refused to give the separate instruction on good faith on the basis that there was nothing in the record to suggest Moseley's good faith. We need not make our own determination as to whether there was that justification or not as in any event the instructions as a whole adequately included the good faith defense. See *United States v. Wilkinson*, 460 F.2d 725, 732 (5th Cir. 1972); and *Beck v. United States*, 305 F.2d

595 (10th Cir. 1962), *cert. denied*, 371 U.S. 890, 83 S.Ct. 186, 9 L.Ed.2d 123. The defendant has no right beyond that to have any instruction on the good faith issue given in the particular form he desired, or with any special emphasis.

Finding no error justifying reversal, we affirm.

AFFIRMED.