**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Morris Wayne DAVIS, a/k/a "Red"**
**Davis, a/k/a Wayne L. Morgan,**
**Defendant-Appellant.**

No. 83–3000.

United States Court of Appeals,
Eleventh Circuit.

April 23, 1984.

Rehearing and Rehearing En Banc
Denied May 31, 1984.

Kirk N. Kirkconnell, Winter Park, Fla., for defendant-appellant.

Don Christopher, Paul J. Moriarty, Asst. U.S. Attys., Orlando, Fla., for plaintiff-appellee.

Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

Morris Wayne Davis appeals his conviction by a jury in the United States District Court for the Middle District of Florida of four counts of making false representations in loan applications to a federally insured bank in violation of 18 U.S.C. § 1014.[1] He was sentenced to two years

---

1. Count One accused Davis of falsely stating in a bank loan application submitted on July 14, 1978, that among his assets he owned a $40,000.00 paid-up life insurance policy issued by Kentucky Builders Insurance Company and $21,265.00 in accounts receivable from Pan American Engineering for concrete work performed pursuant to contract, whereas he did not own such life insurance policy and Pan American Engineering was not indebted to him in any sum.

Count Two alleged that on or about July 18, 1978, the appellant made false statements and overvalued property in a bank loan application, in that he submitted three false bills of sale purporting to evidence ownership of three items of construction equipment which he did not own, and which were later pledged as security for such loan.

Count Three charged that on or about October 16, 1978, the appellant made false statements and overvalued property in a bank loan application by pledging the three pieces of equipment, which he did not own, as security for a renewal

imprisonment on each count, to be served concurrently.

Davis raises five points of error on appeal: (1) that only one offense could be properly charged in Counts One and Two since the criminal conduct alleged therein relates to a single loan; (2) that all four counts of the indictment encompass a single offense because Counts One and Two involve the same loan and counts Three and Four are merely extensions of that loan; (3) that the trial court erroneously refused to grant his motion for judgment of acquittal as to those portions of Counts Two, Three and Four which charged willful overvaluation of property; (4) that the trial court erred in failing to give his requested jury instructions with respect to the effect of a notary public's signature and seal on a document under Florida law; and (5) that the evidence was insufficient to support the allegation in Count One that he made false statements concerning the value and terms of an insurance policy.

We affirm his convictions as to Counts One, Two and Three of the indictment, but reverse his conviction on Count Four.[2]

■ The appellant first contends that only one offense should have been charged

in Counts One and Two of the indictment. He notes that all of the alleged false statements and willful overvaluations charged in these counts were made to procure one $10,000.00 loan on July 18, 1978. In essence, he claims that the alleged false statements are so closely related that they form one functional activity, and therefore should be considered as one false statement for the purposes of 18 U.S.C. § 1014.[3]

In support of this argument, Davis relies on *United States v. Canas*, 595 F.2d 73, 78–79 (1st Cir.1979), in which it was held that several documents containing false statements were all necessary parts of a single loan application and therefore that it was not duplicitous to include all the false statements as a part of the transaction charged in one count. The *Canas* court focused upon the fact that in enacting 18 U.S.C. § 1014, Congress sought to proscribe the use of false statements in the procurement of a bank loan. The court then reasoned that since each statement was an integral part of achieving that result each statement could not form the basis for a separate and distinct offense. *Id.* at 79.[4]

---

of the bank loan in issue in Counts One and Two.

In Count Four Davis was indicted for again, on January 15, 1979, overvaluing the three aforementioned items of equipment by pledging these items, which he did not own, as security for a second renewal of the bank loan.

**2.** At oral argument, the government urged that we affirm the convictions on all counts by applying the concurrent sentence doctrine, which provides that where a defendant is sentenced to concurrent terms on several counts and the conviction on one count is sustained then the reviewing court need not consider the validity of the convictions on the other counts. *E.g., United States v. Crockett,* 514 F.2d 64, 74 (5th Cir.1975). The concurrent sentence doctrine is generally applied as a matter of discretion, *United States v. Mullens,* 583 F.2d 134, 142 (5th Cir.1978), but should not be utilized where a defendant will suffer adverse collateral consequences from unreviewed convictions. *United States v. Rubin,* 591 F.2d 278, 280 (5th Cir.), *cert. denied,* 444 U.S. 864, 100 S.Ct. 133, 62 L.Ed.2d 87 (1979). Because the charges in the four counts arose from an interrelated series of transactions, we are reluctant to let stand the convictions on all four counts, especially in

view of the fact that the government has made no affirmative showing that the likelihood of harm to the defendant in the form of adverse collateral consequences is so remote as to be insignificant. For this reason, we decline to apply the concurrent sentence doctrine.

**3.** 18 U.S.C. § 1014 provides as follows:

Whoever knowingly makes any false statement or report, or willfully overvalues any land, property or security, for the purpose of influencing in any way the action of ... any bank the deposits of which are insured by the Federal Deposit Insurance Corporation, ... upon any application, ... shall be fined not more than $5,000 or imprisoned not more than two years, or both.

**4.** Davis also refers us to cases such as *United States v. Sahley,* 526 F.2d 913 (5th Cir.1976), to advance the proposition that a defendant who makes a number of false statements to a lending institution in his quest for a single loan has committed only one criminal violation. However, *Sahley* as well as several other cases cited by the appellant are distinguishable from the present appeal because they involve several fal-

Although the rationale of *Canas* may be tempting, we are bound by the decision of the former Fifth Circuit Court of Appeals in *Bins v. United States*, 331 F.2d 390 (5th Cir.1964), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964),[5] a case cited as contrary authority by the *Canas* court. 595 F.2d 73, 78. In *Bins*, the court addressed convictions under 18 U.S.C. § 1010 with respect to false statements to the Federal Housing Administration, a statute analogous to 18 U.S.C. § 1014. The *Bins* court held that false statements contained in each of two separate documents comprised two distinct offenses which were properly charged in two separate counts. The court noted that "it is well settled that the test for determining whether several offenses are involved is whether identical evidence will support each of them, and if any dissimilar facts must be proved, there is more than one offense." 331 F.2d at 393. In evaluating the evidence before it, the court observed that different elements of proof were required to show the falsity of each document since they were separate and executed on different dates. The court also stated that it was of no consequence that all of the documents referred to in each count were part of a single transaction.

> Whether a continuous transaction results in the commission of but a single offense or separate offenses is not dependent on the number of unlawful motives in the mind of the accused, but is determined by whether separate and distinct prohibited acts, made punishable by law, have been committed.

*Id.*, citing *Caballero v. Hudspeth*, 114 F.2d 545, 547 (10th Cir.1940).

Here, the written representations referred to in Count One were submitted on or about July 14, 1978, and concerned the life insurance policy and certain accounts receivable, while the documents specified in Count Two were furnished on or about July 18, 1978, and related to the purported ownership of three items of equipment. These submissions constitute separate and distinct acts and could be charged in two different counts of the indictment. *See United States v. Glanton*, 707 F.2d 1238 (11th Cir.1983).

■ Davis' second assignment of error is essentially an extension of the argument made above—that all four counts of the indictment should have been charged as a single offense since Counts One and Two relate to the same loan and Counts Three and Four are merely extensions of that loan. For the same reason expressed above, we reject this contention.

As stated earlier, under the *Bins* rationale the false statements in issue in Counts One and Two constitute separate and distinct acts for the purposes of 18 U.S.C. § 1014 because different proof is required to establish the falsity of each document. The same holds true for the loan renewal applications that are the subjects of Counts Three and Four; conviction on each count required proof of a separate set of circumstances. Although no specific misrepresentations of the appellant's collateral were made in the renewal applications that had not been made in prior submissions, the very fact that misrepresentations were made on separate documents concerning independent transactions necessitates finding that separate and distinct acts occurred that justified additional counts in the indictment.

■ Davis next claims error in the refusal of the district court to grant his motion for judgment of acquittal with respect to

---

sities in one document rather than two false statements made in separate documents. *See, Sahley,* 526 F.2d at 918; *United States v. Sue,* 586 F.2d 70, 71 (8th Cir.1978) (false statements appeared in different paragraphs of a single security agreement); *United States v. Thibadeau,* 671 F.2d 75, 79 (2d Cir.1982) (several false statements made in one document); *United States v. Dota,* 482 F.2d 1005, 1007 (10th Cir.), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 583, 38

L.Ed.2d 477 (1973) (false representations appeared in single financial statements).

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the Former Fifth Circuit issued before October 1, 1981.

those portions of Counts Two, Three and Four which charged him with willfully overvaluing property. The government's theory was based on the fact that Davis did not own the three pieces of equipment enumerated in his application and that such listing necessarily established a willful overvaluation of the property for purposes of 18 U.S.C. § 1014 since that property could have no value as security for his loan. Davis asserts that although the designation of property not owned as an asset on a financial statement may constitute a false statement, it cannot be characterized as a willful overvaluation of the property.

We agree with the appellant that an item claimed as an asset in a financial affidavit does not automatically constitute an overvaluation of the property. Our conclusion is predicated on the language of 18 U.S.C. § 1014 which specifies the acts of "knowingly mak(ing) any false statement or report" and "willfully overvalu(ing) any land property or security" in the disjunctive. It is clear from the statute that the definition of "false statements" cannot be routinely equated with that of "willful overvaluations." *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise"). Merely because a person does not own a claimed asset does not mean that it has been overvalued.

False statements of ownership are misrepresentations of that fact, not willful overvaluations. Only where a declarant assesses an inflated value to property that he actually owns can he be guilty of overvaluation. Only by a strained reading of the statute could false assertions of ownership be labelled as overvaluations. We reject such an interpretation.

Applying these principles to the case at hand, we conclude that it was error not to eliminate the allegations of willful overvaluation in Counts Two, Three and Four.

■ Among the charges in Count Two were allegations that Davis submitted false bills of sale purporting to evidence ownership of a Wabco grader and a Ford backhoe. At the trial, it was established that Davis did not own these pieces of equipment. Similarly, Counts Three and Four referred to the fact that Davis repledged this property which he did not own as security for loan renewals. In each instance, Davis could properly have been charged with making false statements as to his interest in the equipment, but not with willfully overvaluing the property itself.

Despite our disagreement with the district court regarding the charges of overvaluation, we uphold Davis' convictions on Counts Two and Three. These two counts alleged that Davis both made false statements of ownership and overvalued the property, and a finding of guilt as to either activity is sufficient to sustain a conviction under 18 U.S.C. § 1014. Davis does not contend here that he did not make any false representations concerning his possession of the equipment as security for the initial loan and the first renewal note. It is therefore clear that he violated the statute as to one element alleged in those counts. The law is well established that where an indictment charges several proscribed schemes in the conjunctive, proof of only one is sufficient to convict. *United States v. Griffin*, 705 F.2d 434, 436 (11th Cir.1983); *United States v. Haymes*, 610 F.2d 309, 310–11 (5th Cir.1980).

In Count Four, however, Davis was accused only of overvaluing certain pledged property, not with making false statements with respect to the ownership of the property. Our earlier conclusion that overvaluation of property cannot form the basis for a prosecution under 18 U.S.C. § 1014 unless there is ownership of the property mandates reversal of the conviction on Count Four.

■ Davis next attacks the failure of the district court to give his proposed jury charges on the effect of a notary public's signature and seal upon a legal document under Florida law. He contends that these instructions were essential to his defense of Counts Two, Three and Four—that he in fact owned the property described in these counts.

In an effort to assert this defense, Davis produced bills of sale for two of the three pieces of equipment in issue, which disclosed that he purchased the property from Pan American Engineering Company. The signature of Norman Barrett, an officer of Pan American Engineering Company, was witnessed by David I. Little, a notary public. Little testified that he would never notarize a signature unless the person seeking notary certification could present proper identification. Little said he did not specifically remember witnessing Barrett's purported signature, but that any one claiming to be Barrett would have been required to establish his identity at the time of notarization.

Barrett testified that he did not sign the bills of sale, nor did he authorize anyone else to sign them in his name. He positively asserted that he never sold the equipment to Davis.

Davis insists that he was entitled to rely upon the bills of sale since in Florida a notary public certificate of acknowledgment is conclusive of the facts and acts recited therein and, absent fraud, are not subject to collateral attack. *Van Eepoel Real Estate Co. v. Sarasota Milk Co.*, 100 Fla. 438, 129 So. 892 (Fla.1930); *Jensen v. Skibiski*, 158 Fla. 331, 28 So.2d 328 (Fla. 1947). He maintains that proof of such reasonable reliance would obviate any finding of the scienter necessary for a conviction under 18 U.S.C. § 1014. For this reason, he urges that the instructions were necessary to an evaluation of the reasonableness of his reliance upon the notary certification in submitting the bills of sale to the bank.

The first proposed instruction states the requirement of Florida law that a notary public have reasonable proof of the identity of the person whose signature he witnesses and that such person must sign the document in the presence of the notary public. The second requested charge states: "In Florida a notary public's certificate of acknowledgement is conclusive of the facts and acts recited therein and cannot be questioned collaterally."

Even if the requested charges were correct statements of Florida law, about which we express no opinion, we believe that Davis' ground of error misses the point. The evidence revealed that Barrett neither executed the bills of sale nor sold the equipment to Davis. Moreover, the bills of sale were in evidence for the consideration of the jurors who, obviously, gave no weight to Davis' claim of ownership. The district court adequately instructed the jury on the elements of the crimes, including knowledge and intent. Therefore, there was no error in declining to give the requested instructions. *See Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 300 (5th Cir.1978); *Houston v. Herring*, 562 F.2d 347, 348–49 (5th Cir.1977); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1100 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

■ Finally, Davis urges that the evidence regarding false statement or overvaluation of life insurance was insufficient to support his conviction on Count One.

On a personal financial statement dated July 14, 1978, and signed by the appellant, he listed among his assets a Kentucky Builders Insurance Company policy on his life. On the first page of Davis' personal financial statement, he inserted the amount of $40,000.00 in asset category number 7, "Life Insurance, Cash Surrender Value (Do not deduct loans) (See Schedule No. 3)." In Schedule 3 of the financial statement, he indicated the face amount of his Kentucky Builders Insurance Company policy to be $40,000.00, and noted that the policy was paid in full.

According to evidence, however, Kentucky Builders Insurance Policy Number 3735 on the life of the appellant had a face value of only $21,000.00, and it was not paid in full. Also, the appellant's son was the irrevocable beneficiary of this policy pursuant to a divorce decree, and thus the defendant had no rights to the proceeds unless he obtained the consent of the beneficiary. Furthermore, the cash surrender value of the policy as of July 27, 1978, was only $3,331.06 and not $40,000.00.

Davis does not dispute the government's evidence as to the amount or terms of this particular Kentucky Builders Insurance Company policy. The claimed insufficiency of evidence is based on the failure of the prosecution to prove that he did not have other insurance policies with Kentucky Builders Insurance Company which amounted to at least $40,000.00 in cash surrender value.

In evaluating the sufficiency of the evidence, the court must view all of the evidence, together with all logical inferences flowing therefrom, in the light most favorable to the government. *See, e.g., Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The standard of review is whether a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. 1982) (Unit B, *en banc*), *aff'd* —— U.S. ——, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983); *United States v. Miller*, 693 F.2d 1051, 1053 (11th Cir.1982). Viewing the record as a whole, we find the evidence in this respect was sufficient to support conviction on Count One.

AFFIRMED in part and REVERSED in part.