**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued March 27, 2006
Decided March 29, 2006

**Before**

Hon. RICHARD D. CUDAHY, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-2374

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Eastern District of Wisconsin |
| *v.* | No. 04-CR-258 |
| MHAMMAD ABU-SHAWISH, | J.P. Stadtmueller, |
| *Defendant-Appellant.* | *Judge.* |

**ORDER**

Mhammad Abu-Shawish and Josephine Dvorak (a codefendant who does not appeal her convictions) submitted false documents to a lender that enabled them to secure mortgage financing to buy a home. A bank employee discovered the fraud, and the pair was indicted. Both were convicted after a jury trial. Abu-Shawish was found guilty on two counts of bank fraud, 18 U.S.C. § 1344, and two counts of making a false statement to obtain a loan, *id*. § 1014. On each count the court imposed consecutive 60-day terms for a total of eight months' imprisonment. In addition, a fine, totaling $6,000 was imposed. On appeal Abu-Shawish argues that all four convictions are for a single offense and that the entire case must be dismissed as a result. His multiplicity argument is overstated and his proposed remedy is frivolous.

At trial the following evidence was presented. Abu-Shawish and Dvorak contracted to buy a house in Milwaukee for $158,000. To finance the purchase, Dvorak contacted Vickie Harbold, a broker at First Choice Mortgage, who agreed to assist Dvorak and Abu-Shawish in obtaining a loan. Because Dvorak had a credit history but insufficient income and Abu-Shawish had sufficient income but no credit history, Harbold advised them that their best option would be an "emerging market" loan, which would allow them to establish a credit history by providing evidence of past monthly payments on goods and services such as cars, utilities, and telephone service.

After several conversations with Harbold, Abu-Shawish eventually provided her with documents purporting to establish his credit history. The first document was an invoice accompanied by a letter from Hasan Snoubar, the store manager of "Furniture Depot," representing that Abu-Shawish was a regular customer who bought $1,200 worth of furniture and paid for it in six monthly installments. The second document was a letter from Salim Shelleh, owner of "REO Motors," representing that Abu-Shawish had "good standing credit" with his dealership because he bought a mini-van in 2001 and paid for it in installment payments.

In reviewing the loan application, an agent for the lender examined Abu-Shawish's and Dvorak's bank statements. After noticing that Dvorak deposited $5,000.03 into her bank account on August 9, 2002, the agent directed Harbold to obtain more information regarding the source of that money. Harbold contacted Dvorak, who responded with a handwritten letter stating it came from a friend who repaid a loan. Harbold told Dvorak the letter was insufficient because it lacked supporting documentation. Abu-Shawish and Dvorak then gave Harbold a letter they both signed stating that Abu-Shawish gave Dvorak $5,000 to pay off a loan he received from her. After learning this second letter was still insufficient, they submitted a letter purportedly from Wafiah Mhammad Abu-Shawish, the "mother of [ ] Abu-Shawish's children," representing that she had gifted $5,000 to the couple to use toward their home. The lender accepted this letter as sufficient proof of the money's source. With the last of the required documentation in place, the lender (a federally insured bank) approved the loan. Abu-Shawish and Dvorak closed on the deal in September 2002.

As the FBI later discovered, however, the credit letters from Furniture Depot and REO Motors were false, as was the letter purportedly written by Wafiah Abu-Shawish. At trial, Furniture Depot's manager, Snoubar, testified that Abu-Shawish and Dvorak did buy furniture from him but that they charged the purchase on Dvorak's credit card. Snoubar went on to say that he created the false $1,200 invoice at Abu-Shawish's request and signed a cover letter Abu-Shawish drafted regarding his timely installment payments. Similarly, the owner of REO Motors, Shelleh, testified that Abu-Shawish drafted his letter, which he signed at Abu-

Shawish's request, despite knowing that Abu-Shawish did not have good credit at REO Motors. Shelleh explained that, although Abu-Shawish did buy a van from his dealership, he had returned the vehicle because he couldn't make the payments. As for the letters explaining the $5,000 deposit, the FBI determined that all three were false; Dvorak had borrowed the money from CitiFinancial Bank and deposited the loan proceeds into her bank the day after they were received.

Abu-Shawish argues that Count 1, the first of two § 1344 counts, defines "a single scheme to obtain a single mortgage loan to buy a single, specified residence." The remaining counts, one under § 1344 and two under § 1014, he contends, simply allege "various acts in furtherance of that scheme." Because Abu-Shawish did not raise this "multiplicity" argument in the district court, our review is only for plain error. *United States v. Conley*, 291 F.3d 464, 469-70 (7th Cir. 2002). And we conclude that no plain error is present.

Abu-Shawish first argues that § 1344, the bank fraud statute, and § 1014, which concerns false statements, "prohibit essentially the same conduct." By this he presumably means to argue that the § 1014 counts are subsumed by the bank-fraud counts. To support this argument, he relies on *United States v. Seda*, 978 F.2d 779 (2d Cir. 1992), where the Second Circuit held that an indictment charging both § 1344 and § 1014 counts was multiplicitous and opined that the likelihood of violating one of these statutes without also violating the other is "remote" *Id.* at 781-82. But *Seda* was rejected by the Second Circuit seven years later. *See United States v. Chacko*, 169 F.3d 140, 146-47 (2d Cir. 1999). The test for multiplicitous counts today is the traditional one announced eight decades ago in *Blockburger v. United States*, 284 U.S. 299 (1932). *See United States v. Dixon*, 509 U.S. 688 (1993).

Since *Dixon*, several circuits have concluded that under the *Blockburger* analysis an indictment that includes charges under both § 1344 and § 1014 is not multiplicitous. *See United States v. Morrow*, 177 F.3d 272, 293 (5th Cir. 1999); *Chacko*, 169 F.3d at 148; *United States v. Fraza*, 106 F.3d 1050, 1053-54 (1st Cir. 1997). To make this determination, courts have looked at the plain language of each statute. The bank fraud statute provides that:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of

> false or fraudulent pretenses, representations, or
> promises;

>> shall be fined not more than $1,000,000 or imprisoned not more
>> than 30 years, or both.

18 U.S.C. § 1344.  On the other hand, to establish a violation under § 1014, the
government must establish beyond a reasonable doubt that the defendant
(1) knowingly (2) made a false statement (3) to a federally insured financial
institution or other enumerated entity (4) for the purpose of influencing its actions.
*See* 18 U.S.C. § 1014; Fed. Crim. Jury Instructions of the Seventh Circuit 252 (West
1999); *Chacko*, 169 F.3d at 147.  Thus, the *Blockburger* test is easily satisfied
because § 1344 requires proof of a "scheme or artifice to defraud" and § 1014 requires
proof of a false statement, neither of which is required by the other.  *See id.* at 148;
*United States v. Dupre*, 117 F.3d 810, 818 (5th Cir. 1997); *Fraza*, 106 F.3d at 1053.
Abu-Shawish's only answer to these post-*Dixon* decisions is to characterize them as
incorrectly decided.

Abu-Shawish also argues that the two counts under § 1014 are themselves
multiplicitous without regard to § 1344, but he concedes that he has "found no
Seventh Circuit cases directly on point."  That's not surprising for there is no
relevant authority from any court supporting his position.  He apparently is correct
that we have not decided a case in which the defendant argued that multiple
convictions under § 1014 were multiplicitous, but the circuits that have addressed
the question have held that multiple false statements can result in multiple
convictions.  *See United States v. Nash*, 115 F.3d 1431, 1439 (9th Cir. 1997); *United
States v. Davis*, 730 F.2d 669, 671-72 (11th Cir. 1984); *United States v. Miranne*, 688
F.2d 980, 986 (5th Cir. 1982).  Abu-Shawish's two § 1014 convictions relate to
separate letters from the manager of Furniture Depot and from the two defendants
trying to explain the $5,000 deposit; his argument that the two counts are the same
is frivolous.

Abu-Shawish's final argument that the two § 1344 counts are multiplicitous
might have some semblance of merit had he raised the issue in the district court.
But to now satisfy the high burden of plain error, he must show a serious error that
effects the fundamental fairness and integrity of the proceedings resulting in an
actual miscarriage of justice.  *United States v. Olano*, 507 U.S. 725 (1993).  And this
he cannot do.

Abu-Shawish, we were told at oral argument, has finished serving his short
eight month sentence.  Plus, we were also told, he faces other, more serious charges,
in the same district court.  Furthermore, the sentence imposed in this case was part
of a "sentencing package."  From our review of the record we are satisfied that the

court would have imposed the same bottom-line eight month sentence even if three, rather than four, counts of conviction were present.  Accordingly, we decline to find plain error.

The judgment of the district court is AFFIRMED.