UNITED STATES of America, Plaintiff-Appellee,

v.

Frank SMITH and Connie Tyree, Defendants-Appellants.

No. 98-6121.

United States Court of Appeals,

Eleventh Circuit.

Oct. 25, 2000.

Appeals from the United States District Court for the Northern District of Alabama. (No. 97-00045-CR-S-W), C.Lynwood Smith, Jr., Judge.

Before CARNES, BARKETT and MARCUS, Circuit Judges.

CARNES, Circuit Judge:

This appeal arises out of the convictions of Frank Smith and Connie Tyree on a number of federal criminal counts relating to violation of absentee voter laws in connection with the November 1994 general election in Greene County, Alabama. The two of them raise numerous issues on appeal, contending that: (1) the indictment should have been dismissed on the ground of selective prosecution based on race and political affiliation; (2) there was insufficient evidence to convict Tyree on two of the counts of giving false information in violation of 42 U.S.C. § 1973i(c); (3) the United States Sentencing Guidelines were misapplied in sentencing Smith and Tyree; (4) they were convicted on multiplicitous counts; (5) certain evidence relating to absentee ballot affidavits witnessed by Tyree should not have been admitted into evidence; (6) the jury was erroneously instructed regarding Alabama law and "proxy" voting; and (7) Tyree was denied her constitutional right under the Fifth and Sixth Amendments to present witnesses in her defense.

For the reasons set forth below, we conclude that all of Smith's arguments miss the mark, and his convictions and sentence are due to be affirmed in all respects. All but one of Tyree's arguments miss. Her conviction is due to be affirmed except on Count 12; reversal of that part of her conviction makes it necessary that she be re-sentenced.

**I. PROCEDURAL HISTORY**

In January of 1997, Frank Smith and Connie Tyree were charged in a thirteen-count indictment with offenses arising out of the November 8, 1994 general election in Greene County, Alabama. Among the offices to be filled in that election was the office of Member of the United States House of Representatives, a fact which supplies a necessary element of the federal charges. Count 1 of the indictment charged Smith

and Tyree with conspiring, in violation of 18 U.S.C. § 371, to vote more than once in a general election by applying for and casting fraudulent absentee ballots in the names of voters without the voters' knowledge and consent, in violation of 42 U.S.C. § 1973i(e), and with conspiring to knowingly and willfully give false information as to a voter's name and address for the purpose of establishing the voter's eligibility to vote in the November 8, 1994 general election, in violation of 42 U.S.C. § 1973i(c).[1]

---

[1] 42 U.S.C. § 1973i(e) reads as follows:

(e) Voting more than once

(1) Whoever votes more than once in an election referred to in paragraph (2) shall be fined not more than $10,000 or imprisoned not more than five years, or both.

(2) The prohibition of this subsection applies with respect to any general, special, or primary election held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

(3) As used in this subsection, the term "votes more than once" does not include the casting of an additional ballot if all prior ballots of that voter were invalidated, nor does it include the voting in two jurisdictions under section 1973aa-1 of this title, to the extent two ballots are not cast for an election to the same candidacy or office.

42 U.S.C. § 1973i(e).

42 U.S.C. § 1973i(c) reads as follows:

(c) False information in registering or voting;  penalties

Whoever knowingly or willfully gives false information as to his name, address, or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: *Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

42 U.S.C. § 1973i(c).

The terms "vote" and "voting" are defined as follows:

all action necessary to make a vote effective in any primary, special, or general election, including, but not limited to, registration, listing pursuant to this subchapter, or other action required by law prerequisite to voting, casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election.

Count 2 charged Smith and Tyree with voting more than once and aiding and abetting each other and others in the same offense, in violation of 42 U.S.C. § 1973i(e) and 18 U.S.C. § 2. That count alleged that Smith and Tyree voted the absentee ballots of Shelton Braggs, Willie C. Carter, Jr., Cassandra Lee Carter, Sam Powell, Eddie Gilmore, Angela Hill and Michael Hunter without the knowledge and consent of those voters. Counts 3 through 13 charged either Smith or Tyree or both with giving false information on an application for absentee ballot or on an affidavit of absentee voter concerning the names and addresses of Hill, Gilmore, Willie Carter, Cassandra Carter, Braggs and Powell, and with aiding and abetting each other and others in the same offense in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2.[2]

Smith and Tyree, who are black, filed a motion to dismiss the indictment on the ground of selective prosecution on the basis of race and political affiliation. After a four and a half day evidentiary hearing, the magistrate judge recommended that the motion to dismiss be denied. Adopting that recommendation, the district court denied the motion. After a seven day trial, the jury found Smith guilty on all seven counts with which he had been charged and Tyree guilty on all eleven counts with which she had been charged.[3]

At sentencing, the court applied the United States Sentencing Guidelines ("U.S.S.G.") § 2H2.1 and

---

42 U.S.C. § 1973*l* (c)(1).

[2]Specifically, Counts 3 and 4 charged Tyree with giving and aiding and abetting others to give false information on an application for an absentee ballot and on an affidavit of absentee voter, respectively, concerning the name and address of Angela Hill, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 5 charged Tyree with giving and aiding and abetting others to give false information on an application for absentee ballot concerning the name and address of Eddie T. Gilmore, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 6 charged Smith and Tyree with giving and aiding and abetting others to give false information on an affidavit of absentee voter concerning the name and address of Gilmore, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 7 charged Tyree with giving and aiding and abetting others to give false information on an affidavit of absentee voter concerning the name of Sam Powell, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 8 charged Smith with giving and aiding and abetting others to give false information on an application for absentee ballot concerning the name and address of Cassandra Carter, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 9 charged Smith and Tyree with giving and aiding and abetting others to give false information on an affidavit of absentee voter concerning the name and address of Cassandra Carter, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 10 charged Smith with giving and aiding and abetting others to give false information on an application for absentee ballot concerning the name of Willie C. Carter, Jr., in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Count 11 charged Smith and Tyree with giving and aiding and abetting others to give false information on an affidavit of absentee voter concerning the name of Willie C. Carter, Jr., in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. Counts 12 and 13 charged Tyree with giving and aiding and abetting others to give false information on an application for absentee ballot and on an affidavit of absentee voter, respectively, concerning the name and address of Shelton Braggs, in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2.

[3]On Count 2, Smith was found guilty of voting more than once with respect to Cassandra Carter, Willie C. Carter and Eddie Gilmore. Tyree was found guilty on Count 2 with respect to Angela Hill, Michael Hunter, Sam Powell, Cassandra Carter, Shelton Braggs, Willie C. Carter and Eddie Gilmore.

concluded that the appropriate base offense level for Smith and Tyree's offenses was 12. The court then enhanced Smith's sentence two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1, enhanced Tyree's sentence two levels for abuse of a position of trust pursuant to U.S.S.G. § 3B1.3, and enhanced both sentences four levels for their status as organizers or leaders of criminal activity involving five or more participants pursuant to U.S.S.G. § 3B1.1(a). Those enhancements brought the total offense level for both Smith and Tyree to 18. The court then sentenced Smith and Tyree to thirty-three months of imprisonment on each count to run concurrently, two years of supervised release upon release from custody, forty hours of community service, and the required $50.00 per count assessment fee. They both appealed.

## II. STANDARDS OF REVIEW

A district court's denial of a motion to dismiss on the ground of selective prosecution involves both conclusions of law and findings of fact. We review the court's factual findings for clear error and its legal conclusions *de novo.* *See Newell v. Prudential Ins. Co. of America,* 904 F.2d 644, 649 (11th Cir.1990); *United States v. Jones,* 52 F.3d 924, 927 (11th Cir.1995) (*de novo* review of district court decision on selective prosecution); *United States v. Brundidge,* 170 F.3d 1350, 1352 (11th Cir.1999) (with motions involving mixed questions of law and fact "[w]e review the factual findings of the district court for clear error and the application of the law to those facts de novo.").

We review challenges to the sufficiency of the evidence *de novo,* viewing the evidence in the light most favorable to the government and drawing all reasonable inferences from the evidence in favor and in support of the jury verdict. *See United States v. Starke,* 62 F.3d 1374, 1380 (11th Cir.1995); *United States v. Thomas,* 8 F.3d 1552, 1556 (11th Cir.1993).

We review the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *See* 18 U.S.C. § 3742(d) ("The court of appeals ... shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts."); *United States v. Gregg,* 179 F.3d 1312, 1316 (11th Cir.1999) (factual findings that supported obstruction of justice enhancement reviewed for clear error).

We review whether counts in an indictment are multiplicitous *de novo. See United States v. Cluck,* 143 F.3d 174, 179 (5th Cir.1998).

We review the district court's evidentiary rulings under an abuse of discretion standard. *See United States v. Tokars,* 95 F.3d 1520, 1530 (11th Cir.1996).

We review a district court's jury instruction deferentially:

> So long as the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instructions. On appeal, we examine whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled. However, if no objection to the instructions was raised at trial, we only review for plain error.

*Starke,* 62 F.3d at 1380 (citations and quotations omitted); *see also McNely v. Ocala Star-Banner Corp.,* 99 F.3d 1068, 1072 (11th Cir.1996); *Goulah v. Ford Motor Co.,* 118 F.3d 1478, 1485 (11th Cir.1997); *Jennings v. BIC Corp.,* 181 F.3d 1250, 1254 (11th Cir.1999).

## III. ANALYSIS

A. WHETHER THE DISTRICT COURT ERRED BY FAILING TO GRANT SMITH AND TYREE'S MOTION TO DISMISS THE INDICTMENT ON THE GROUND OF SELECTIVE PROSECUTION BASED ON RACE AND POLITICAL AFFILIATION

The reality resulting from limited law enforcement and judicial resources is that not every criminal violation of the United States Code can be prosecuted. The decision as to which crimes and criminals to prosecute is entrusted by the Constitution not to the judiciary, but to the executive who is charged with seeing that laws are enforced. *See* U.S. Const. Art. II, § 3 ("he shall take Care that the Laws be faithfully executed"). The judiciary cannot interfere with a prosecutor's exercise of charging discretion, except in narrow circumstances where it is necessary to do so in order to discharge the judicial function of interpreting and applying the Constitution.

Prosecutors are given broad discretion in deciding against whom to focus limited prosecutorial resources, and a strong "presumption of regularity supports ... [those] decisions." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996) (citations and quotations omitted). But they must exercise their charging discretion within constitutional constraints, including those "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment." *See id.* Under that clause, "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (citation and quotation omitted). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* at 463, 116 S.Ct. at 1486.

Defendants bear a "demanding" burden when seeking to establish that they are being selectively prosecuted in an unconstitutional manner. *Id.* "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present *clear* evidence to the contrary." *Id.* at 465, 116

S.Ct. at 1486-87 (emphasis added) (citations and quotations omitted).  The Supreme Court has explained the

pragmatic and policy as well as constitutional reasons behind the substantial deference given to prosecutors:

> Judicial deference to the decisions of these executive officers rests in part on an assessment of the relative competence of prosecutors and courts.  Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake.  It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function.  Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.

*Id.* (citations and quotations omitted).

In accordance with this judicial deference to prosecutorial discretion, we are to evaluate a selective

prosecution claim using "ordinary equal protection standards."  *Id.* (citations and quotations omitted).

Specifically:

> The claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose.  To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted.

*Id.* (citations and quotations omitted).  With these principles in mind we will turn to Smith and Tyree's

arguments that the district court should have granted their motion to dismiss on the ground of selective

prosecution.[4]

Smith and Tyree first argue that they are only required to establish the two components of a selective

prosecution case—discriminatory effect and motive—by a preponderance of the evidence, so it was error for

the district court to require them to shoulder a clear and convincing evidence burden of persuasion.  The issue

boils down to interpreting what the Supreme Court meant when it said in *Armstrong,* that "[i]n order to dispel

the presumption that a prosecutor has not violated equal protection, a criminal defendant must present *clear*

---

[4]Before doing so, we note that the government complains vehemently about having been required to disclose its investigative files to the defendants and being subjected to a four and a half day evidentiary hearing on the selective prosecution motion.  It argues that the defendants did not make a sufficient showing to justify the evidentiary hearing or the intrusion into the prosecution's files.  If that argument is valid, there is reason to be concerned. *See generally Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1486 ("Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." (citations and quotations omitted)).  But the government did not attempt to have us review the district court's decision in these respects at the time, has not cross-appealed any of those rulings, and does not ask us to disregard the resulting evidence which it contends shows there was no basis to the selective prosecution motion.  As a result, we will consider all of the evidence in the record, but we do so without implying that we think the district court properly permitted the extensive inquiry it did based upon the showing the defendants had made.

evidence to the contrary...." *Id.* at 465, 116 S.Ct. at 1486 (emphasis added) (citations and quotations omitted). Clear evidence sounds like more than just a preponderance, and evidence that is clear will be convincing. So, we interpret *Armstrong* as requiring the defendant to produce "clear" evidence or "clear and convincing" evidence which is the same thing. The district court did not err in that respect.

Next, Smith and Tyree contend that the district court erred by relying on the possibility of future prosecutions to conclude that they had not proven they were singled out for prosecution. The magistrate judge, in a report and recommendation adopted in full by the district court, concluded that the defendants had failed to establish either prong of a selective prosecution claim. In regard to the first prong, which he called the "selectivity prong," the magistrate judge said that "[i]t is certainly true that there is evidence in the record indicating" that others who had not been prosecuted had engaged in fraudulent absentee ballot voting activities, including forging voters' signatures and altering ballots. But the magistrate judge reasoned that because the government's investigation was still active at the time of the motion, those others might be prosecuted at some time before the statute of limitations ran out. On that basis, he concluded that the defendants had failed to establish the first prong of the required showing.

We agree with the defendants that the mere possibility of future prosecutions, without more, is not a sufficient basis upon which to find that the requisite discriminatory effect or selectivity showing has not been clearly proven. Otherwise, a selective prosecution claim might not be ripe for decision until the statute of limitations runs out. We recognize, of course, that prosecutors have to start somewhere, and everyone engaged in the same type of wrongdoing often will not be charged simultaneously. There can be all kinds of practical reasons, including differences in evidence or in the progress of the investigation, which cause the government to prosecute some criminals before others for the same crime. But those legitimate reasons can be stated where they exist, and they will be sufficient to establish that any selectivity that has been exercised was not the result of unconstitutional motives. We do not rule out the possibility in a proper case of a remand to supplement the record with material facts relating to prosecutions that occur after the district court has denied a selective prosecution motion, but we do not think a remand is necessary in this case. The statute of limitations has now run, and we will assume for present purposes that no prosecution of anyone outside the groups to which Smith and Tyree claim membership will ever be prosecuted in connection with illegal

activities relating to the November 8, 1994 election in Greene County.[5]

We turn now to the heart of Smith and Tyree's argument which is that they presented sufficient evidence to prove both prongs of a valid selective prosecution claim. As we have already stated, in order to establish their selective prosecution claim, they were required to show that their prosecution had a discriminatory effect, i.e., that similarly situated individuals were not prosecuted, and they were also required to show that the difference in treatment, or selectivity of the prosecution, was motivated by a discriminatory purpose. *See Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1486-87. We recognize that the nature of the two prongs of a selective prosecution showing are such that they will often overlap to some extent, but we discuss them separately beginning with the selectivity or discriminatory effect prong.

Smith and Tyree attempted to establish discriminatory effect by showing that individuals belonging to two groups committed voting rights violations like the ones charged against Smith and Tyree, but were not prosecuted. One group, defined by race, consists of certain named white residents of Greene County or Wilcox County. The other group includes residents who like Smith and Tyree are black. But those black people are different, Smith and Tyree contend, because they belong to a different political faction. Smith and Tyree are members of the Alabama New South Coalition which they point out has fewer white members than the biracial Citizens for a Better Greene County ("CBGC").[6] The two groups who supposedly received more favorable treatment overlap to the extent that some or all of the whites in the first group are members of the CBGC. Predicating a selective prosecution claim on the contention that members of the defendants' own race were not prosecuted because they were politically allied with whites is a novel approach. We need not decide whether such an allegation is a sufficient basis for a selective prosecution claim, but instead will assume for purposes of discussion that it can be. Even assuming that a viable selective prosecution claim can be made based on discriminatory treatment among African-Americans, Smith and Tyree have failed to show that their prosecution had a discriminatory effect—that similarly situated individuals were not prosecuted—and they

[5]While this case was on appeal, counsel for Smith and Tyree filed what they describe as a Fed. R.App. P. 28(j) letter informing us of various matters, including the fact that the statute of limitations has run. The letter says that since Smith and Tyree were convicted nine other Greene County residents have been indicted in connection with alleged illegal activities relating to the same election, but all are black and are supporters of the same political faction as Smith and Tyree.

[6]Smith and Tyree's descriptions of the two political factions is as follows: "[T]he rival blocs might be described as, on one side, a black majority faction, affiliated with the Alabama New South Coalition, and, on the other, an ostensibly nonpartisan and biracial group, Citizens for a Better Greene County, founded by political opponents of the black majority faction and backed by most of the remaining white power structure within the County." Appellants' Brief at 5-6 (internal marks and citations omitted).

have also failed to show that the federal prosecutorial policy was motivated by a discriminatory purpose.

The beginning step in comparing the prosecution of the defendants with the non-prosecution of those who were "similarly situated" is to determine who, if anyone, was similarly situated with the defendants. Neither this Court nor the Supreme Court has definitively explained what constitutes a "similarly situated" individual in this context,[7] but the definition is informed by the Supreme Court's recognition of legitimate factors that may motivate a prosecutor's decision to bring a case against a particular defendant. Those factors include "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1486.

In light of those legitimate factors, we define a "similarly situated" person for selective prosecution purposes as one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant. Consequently, for Smith and Tyree to establish selective prosecution, they must show that there are other individuals who voted twice or more in a federal election by applying for and casting fraudulent absentee ballots, *and* who forged the voter's signature or knowingly gave false information on a ballot affidavit or application, *and* that the voter whose signature those individuals signed denied voting, *and* against whom the government had evidence that was as strong as the evidence it had against Smith and Tyree. That is the case the government built against Smith and Tyree, and in order to prevail on their selective prosecution claim Smith and Tyree must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in

---

[7]In *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir.1978), we quoted favorably from a Second Circuit opinion which referred to "conduct of the type forming the basis of the charge against" the defendant, but in actually applying the test we focused more narrowly, concluding there was no selective prosecution because "the conduct for which he was prosecuted is not ordinarily ignored," *id.* at 1308-09. In *United States v. Pleasant,* 730 F.2d 657, 663 (11th Cir.1984), we continued that focus, asking whether the defendant had carried his burden of showing that he "has been singled out for prosecution while others similarly situated and committing the same acts have not been prosecuted." (emphasis added). Our opinion in *United States v. Gordon,* 817 F.2d 1538, 1539-40 (11th Cir.1987), says that the defendant must prove that "others similarly situated have not generally been proceeded against for the type of conduct with which he has been charged." We do not view these prior pronouncements as being inconsistent either with each other or with our statements in this opinion. "Conduct of the type forming the basis of the charge" against a defendant will be "the conduct for which he was prosecuted," and "others similarly situated and committing the same acts" will be guilty of the same crimes as the defendant.

that or substantially the same manner.

A painstaking review of the record reveals that Smith and Tyree did not carry their burden. In their initial brief Smith and Tyree point to Patsy Rankins and Betty Banks, both of whom are white, as people who were similarly situated but escaped prosecution. But what they say that Rankins and Banks did is not the same as the conduct for which Smith and Tyree were convicted. Rankins allegedly harassed voters, jerked on the arm of one voter and tried to influence that voter's vote. Banks allegedly went into the post office, handled absentee ballots, and took pictures of the ballots. Neither one of them is alleged to have written false information or forged names on an absentee application or affidavit, or to have voted more than once.

Smith and Tyree also allege that other individuals (most if not all of whom are black but none of whom were affiliated with the Alabama New South Coalition), engaged in activities such as paying people to vote, changing a vote on a ballot, and stealing a ballot out of a mailbox. While that alleged conduct is serious, the Supreme Court has noted "the Government's enforcement priorities" as a factor that could legitimately distinguish between those who are prosecuted and those who are not. *See Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1486. Choosing enforcement priorities is an important part "of a core executive constitutional function," and the process is "not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (citations and quotations omitted). In other words, we are neither authorized nor competent to second guess the government on which among the universe of different crimes should be prosecuted. *See United States v. Parham,* 16 F.3d 844, 846-47, 846 n. 3 (8th Cir.1994) (holding that alleged irregularities, including harassing and intimidating black voters, were not sufficiently similar to act of forging names on absentee ballots for which defendants were prosecuted and thus defendants did not make out a prima facie case of selective prosecution).[8] Moreover, at least some of this alleged misconduct by others involved single instances and not the repeated criminal conduct for which the defendants were prosecuted. As we will explain shortly, that does make a difference.

Focusing now on the crimes for which Smith and Tyree were prosecuted, there is some evidence that other individuals signed another voter's signature to, or filled out the administrative information on, an

---

[8]We note that the Eighth Circuit misread our decision in *United States v. Gordon,* 817 F.2d 1538, 1540 (11th Cir.1987), *rev'd in part on other grounds,* 836 F.2d 1312 (11th Cir.1988), to the extent that it characterized the result as "selective prosecution found where others had not been prosecuted for the same offense." *Parham,* 16 F.3d at 847. We did not find selective prosecution in *Gordon* and held only that the defendant was "entitled to an evidentiary hearing on the selective prosecution claim so the full facts [would] be known." *Gordon,* 817 F.2d at 1540.

application for absentee ballot or the affidavit of absentee voter that was not their own. Larry Nelson, the defendants' handwriting expert, testified at the evidentiary hearing that he found multiple instances where the voter's signature or the administrative information was completed by someone other than the voter and other than Smith or Tyree. But none of those voters testified that they had not voted the ballot that was cast in their name or authorized someone else to do so.

Smith and Tyree's briefs to this Court fail to face up to that type of difference. For example, in their initial brief, they point to Rosie Carpenter, Lenora Burks and Annie Thomas as individuals who witnessed a substantial number of absentee ballots, and who therefore should have been targets of the investigation. Yet nowhere do Smith and Tyree point to statements (much less testimony) from any of those voters whose absentee ballots were witnessed by Carpenter, Burks or Thomas indicating that those voters themselves did not actually vote their ballots regardless of who witnessed them. Witnessing large numbers of absentee ballots is not, in and of itself, a crime.

Our careful review of the record found some evidence (whether it is clear is another matter) in the FBI reports that an absentee ballot was voted in the name of someone who said that he did not cast it. That evidence included four instances where an individual witnessed two ballots and the voters in whose names the ballots were cast told the FBI that they did not vote, and eight instances where an individual witnessed one ballot in the name of the voter who stated that he did not vote.[9] Those individuals may have committed the same type of crimes as the defendants, but they are not similarly situated with respect to the number of crimes they committed.

The prosecution had, and presented at trial, sufficient evidence to prove beyond a reasonable doubt that Tyree fraudulently applied for or fraudulently cast, or both, absentee ballots in the names of seven voters: Hill, Gilmore, Powell, Cassandra Carter, Willie Carter, Braggs and Hunter.[10] And the same is true of the

---

[9] We note that several of the FBI investigative reports which this Court examined seemed internally inconsistent with respect to whether the voter did or did not vote. We did our best to identify similarly situated individuals, but as the Supreme Court noted in *Armstrong,* judicial deference to prosecutors is based on the fact that this kind of investigative and prosecutorial analysis is better conducted by prosecutors than by judges. *See Armstrong,* 517 U.S. at 465, 116 S.Ct. at 1486. To the extent any similarly situated individuals exist that we were unable to identify from the record and briefs, that inability reflects a failure on the part of Smith and Tyree to carry their burden.

[10] Later in this opinion, we will reverse Tyree's conviction on Count 12, giving false information with respect to the name and address of Braggs on an application of absentee ballot, for insufficient evidence, but affirm her conviction on Count 13, giving false information with respect to the name and address of Braggs on an affidavit of absentee voter. *See infra* Part III.B.

evidence the prosecution had and presented at trial to prove that Smith committed those same crimes involving three voters: Gilmore, Cassandra Carter and Willie Carter. The prosecution had, and presented at trial, sufficient evidence to prove beyond a reasonable doubt that Tyree knowingly or willfully gave false information to establish the eligibility to vote ballots in the names of six voters: Hill, Gilmore, Powell, Braggs, Cassandra Carter and Willie Carter.[11] And the same is true of the evidence that the prosecution had and presented at trial to prove that Smith committed the same crimes involving three voters: Gilmore, Cassandra Carter and Willie Carter.

The government can legitimately place a higher priority on prosecuting someone who commits an offense three, six or seven times, than someone who commits an offense once or twice, especially when the offense is a non-violent one. Likewise, the willingness of a jury to convict a defendant of a crime may increase with the number of times that defendant has committed the crime.

Finally, we do not know from the record the strength of the evidence that others may have committed similar crimes, because saying something is one thing and testifying to it is another. We do know that the evidence Smith and Tyree committed these crimes was strong enough to convince a jury beyond a reasonable doubt.

For all of these reasons, Smith and Tyree failed to carry their burden that the others who may have committed crimes in connection with the November 8, 1994 general election were similarly situated to them. Smith and Tyree failed to carry their burden of establishing the discriminatory effect or selectivity prong.[12]

---

[11]*See supra* note 9.

[12]In the magistrate judge's report and recommendation, he concluded that "there is evidence in the record indicating that other people have engaged in fraudulent absentee-ballot voting activities, including forging voters' signatures and altering ballots. What has not been shown is that these other individuals will never be prosecuted." We have previously disagreed with the magistrate judge's conclusion that the possibility of future prosecution is enough to rule out discriminatory effect. We also disagree with the report's apparent conclusion—if it is a conclusion—that the individuals Smith and Tyree point to were similarly situated with them. Our disagreement is not over any factfinding or credibility choice the magistrate judge made, but instead with the law which he applied to the facts.

     As we have explained, in order to establish that others were similarly situated with them, Smith and Tyree had to prove by clear evidence that others committed the same crimes as they did, the same or a greater number of times, and that the evidence against those others was as strong or stronger than the evidence against Smith and Tyree. They failed to carry their burden. The magistrate judge applied the "similarly situated" test at too high a level of generality, assuming that anyone who committed any violation of federal law in connection with the same election is "similarly situated" with Smith and Tyree.

     While we could remand the case to the district court for it or the magistrate judge to have another go at it, a remand would be pointless because our detailed review of the record convinces

Not only did Smith and Tyree fail to prove by clear evidence that there were similarly situated individuals who were not prosecuted and thereby failed to establish the discriminatory effect prong, they also failed to prove by clear evidence discriminatory intent and thereby failed to establish the second prong, too. Smith and Tyree argue that they established the discriminatory intent in two ways. First, they argue that the decision to bring the case in federal court, instead of state court, was prompted by a desire to avoid a black jury, and second, they argue that the district court's rejection of the government explanation for its peremptory strike of one black veniremember evidenced discriminatory intent behind the prosecution.

The first contention is not supported by even a shred of evidence in the record. It rests instead on an assumption that black defendants will not be treated in a just manner in federal court, an assumption which we reject. In regard to the second contention, at trial the government gave a race neutral reason for exercising the questioned peremptory strike, explaining that the prospective juror was not paying attention, that he was dozing off, and that he had his eyes closed during the voir dire questioning. The court rejected that strike because its "impressions of [the prospective juror] were not consistent with those recited by" the government. The only thing the court's rejection of the government's strike reveals is that the court did not agree with the government's observations. Rejection of one peremptory strike is no basis for concluding that the underlying prosecution is motivated by bias.

Having failed to prove by clear evidence either prong of a selective prosecution claim, Smith and Tyree were not entitled to have their motion to dismiss granted.

## B. WHETHER THERE WAS SUFFICIENT EVIDENCE TO CONVICT TYREE ON COUNTS 12 AND 13

Counts 12 and 13 of the indictment charge Tyree with violating 42 U.S.C. § 1973i(c) by giving false information on an application for absentee ballot and on an affidavit of absentee voter, respectively, concerning the name and address of Shelton Braggs. Tyree contends that those two counts required the government to prove beyond a reasonable doubt that Braggs neither filed the application or affidavit himself nor consented to their being filed by Tyree on his behalf. There was insufficient evidence to convict her on those counts, she says, because there was no evidence in the record that Braggs' application and affidavit were

---

us that no facts could be found from the record evidence that would justify a conclusion Smith and Tyree had proved by clear evidence that others who were not prosecuted were similarly situated to them in the sense the applicable law requires. In addition, as we are about to explain, we agree with the magistrate judge that Smith and Tyree failed to establish discriminatory motive or purpose, which is an independently adequate basis for denial of their motion.

not filed at his direction.[13]

Neither Count 12 nor Count 13 charges that the relevant document was filed without Braggs' permission, and nothing in § 1973i(c) requires that the information be given without the voter's permission. Accordingly, when instructing the jury on the individual counts, the district court properly did not include "without the voter's permission" as a necessary element of the offenses charged in Counts 12 and 13. Tyree's arguments to the contrary are meritless.

However, the falsity of the information on the application or affidavit is an element of § 1973i(c), and there was insufficient evidence to prove beyond a reasonable doubt that the information was false with respect to the application which is the subject of Count 12. The government's handwriting expert testified that Tyree filled in some of the administrative information, including the addresses, on the application for absentee voter, but he was unable to say that Tyree had signed the application. The expert did not have a sample of Braggs' handwriting and could not rule out Braggs having signed the application. There was no evidence at trial that anyone other than Braggs had signed his name to the application.

The absentee election manager, Johnnie Knott, testified that the application referred to in Count 12 listed voter Braggs' residence address as 113 O'Neal Street, and it listed the "mail ballot to" address as 507 Greensboro Street. There was no evidence that those addresses were not valid addresses for Braggs. In fact, there was testimony that those were good addresses for Braggs.[14] The evidence is consistent with Braggs signing the application that Tyree lawfully helped him fill out. Accordingly, we conclude that there is insufficient evidence to support a finding that any of the information Tyree wrote onto the application that is the subject of Count 12 was false, and her conviction on that count must be reversed.

---

[13]After trial but before sentencing, Braggs gave a sworn statement to defense counsel that was taken down by a court reporter. In it Braggs said: that he lived in Maryland at the time of the statement; that at the time of the election in November 1994 he considered 113 O'Neal Street in Eutaw, Greene County, Alabama, to be his permanent home; and that he did not personally cast an absentee ballot in that general election, but he gave Tyree permission to cast an absentee ballot for him provided that she voted the ballot for Smith. Because the issue raised before us is the sufficiency of the evidence to support the jury's verdict, we consider only the evidence that was before the jury.

[14]Cora Stewart testified at trial that Braggs used to live on O'Neal Street but he had moved. She said that she did not know where he moved to or how long he has been away from Greene County because he is "in and out." She also said she thought the last time she saw Braggs in Eutaw (in Greene County) was "last year" and he was "at home on O'Neal Street" where his mother lives.

Josephine Lewis testified that Braggs was Tyree's boyfriend in 1994 and Hattie Edwards testified that Braggs lived with Tyree in 1994. The prosecution says in its brief that Tyree lived at 507 Greensboro Street, but the government does not cite any part of the record that actually backs up its statement, and we were unable to find any evidence to that effect.

The sufficiency of the evidence supporting Count 13, which charged Tyree with giving false information on Braggs' affidavit of absentee voter is a different matter. The government handwriting expert testified that Tyree signed Braggs' affidavit. Under Alabama law, there is no such thing as proxy voting: A voter cannot legally authorize or direct another to vote his ballot in his place. *See Taylor v. Cox,* 710 So.2d 406 (Ala.1998) (absentee voting ballot invalid where voter's name not signed by voter but by designated agent with permission). Consequently, to sign someone else's name, with or without permission, is to "give[ ] false information as to his name." 42 U.S.C. § 1973i(c). Regardless of whether the other information on the affidavit was truthful, Tyree still gave false information by signing Braggs' name, because she is not Braggs.

C. WHETHER SMITH AND TYREE WERE CONVICTED ON MULTIPLICITOUS COUNTS

"Multiplicity is the charging of a single offense in more than one count. When the government charges a defendant in multiplicitous counts, two vices may arise. First, the defendant may receive multiple sentences for the same offense. Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes—not one. To determine whether an indictment is multiplicitous, we first determine the allowable unit of prosecution." *United States v. Langford,* 946 F.2d 798, 802 (11th Cir.1991) (citations omitted).

Smith and Tyree contend that the allowable unit of prosecution with respect to § 1973i(c) should include all steps preparatory to casting a ballot, regardless of the number of pieces of false information supplied. That contention forms the basis for their argument that certain pairs of counts in the indictment were multiplicitous, because those counts charged false information on the application for absentee ballot of a particular voter in one count and false information on the affidavit of absentee voter of the same voter in the other count.[15]

The application of absentee ballot and affidavit of absentee voter are different documents serving distinct purposes. A count charging the giving of false information on an application of absentee ballot requires different proof than a count charging the giving of false information on an affidavit of absentee voter. The counts in question charge different offenses that may properly be charged in separate counts. *See United States v. Davis,* 730 F.2d 669, 671-72 (11th Cir.1984); *United States v. Cluck,* 143 F.3d 174, 179 (5th

---

[15]Specifically, Smith was convicted on Counts 8 and 9, both of which concerned Cassandra Carter, and Counts 10 and 11, both of which concerned Willie Carter. Tyree was convicted on Counts 3 and 4, both of which concerned Hill, Counts 5 and 6, both of which concerned Gilmore, and Counts 12 and 13, both of which concerned Braggs.

Cir.1998).[16]  There was no multiplicity error.

D. WHETHER THE DISTRICT COURT ERRED IN ADMITTING EVIDENCE OF ABSENTEE BALLOT AFFIDAVITS TYREE WITNESSED

The district court admitted into evidence a government exhibit consisting of approximately ninety-five affidavits of absentee voter that had been witnessed by Tyree.[17]  Smith and Tyree assert the district court erred by admitting those affidavits because there was no evidence of wrongdoing as to most of them. The district court thought the affidavits were directly relevant to the conspiracy count.  Paragraph 15 of Count 1 of the indictment reads as follows:

> It was further a part of the conspiracy that the defendants and their co-conspirators in some instances where a voter's signature was obtained on the affidavit of absentee voter would at a later time cause the affidavit of absentee voter to be completed, including the witnessing of the voter's signature by persons who did not see the voter sign the affidavit, and would cause the absentee ballot to be submitted and voted.

---

[16]Our holding, which is largely based upon *United States v. Davis,* 730 F.2d 669 (11th Cir.1984), is not inconsistent with *United States v. Langford,* 946 F.2d 798 (11th Cir.1998).  In *Langford,* the defendant was charged with securities fraud relating to false statements made in several different documents related to a single purchase of securities, in violation of 15 U.S.C. §§ 78j(b) and 78ff.  *See id.* at 800.  We said that "[t]o avoid the vices of multiplicity in securities fraud cases, each count of the indictment must be based on a *separate* purchase or sale of securities and each count must specify a false statement of material fact—not a full-blown scheme to defraud—in connection with that purchase or sale."  *Id.* at 804 (emphasis added).  Because the indictment in that case did not allege that each document "contained a specific material misstatement" and was "in conjunction with separate purchase or sale transactions," we held that the indictment was multiplicitous.  *See id.*  The *Langford* holding was, however, explicitly limited to securities fraud cases.  *See id.*

The defendant in *Davis* was charged with making false statements to a federally insured bank in several different documents, in violation of 18 U.S.C. § 1014.  *See Davis,* 730 F.2d at 671.  The documents were designed to procure a single loan.  *See id.*  We held that different counts in an indictment were appropriate because different documents were involved and different proof was required as to each count.  *See id.* at 672.

We find *Davis* to be more analogous to the situation at hand.  There are dangers inherent in the nature of securities cases that were not present in *Davis* and are not present in the case before us today.  With the purchase and sale of securities, a single document, such as a prospectus, is mailed to thousands of shareholders, which raises the specter of thousands of counts.  There was no similar mass publication or distribution of the loan documents in *Davis* nor of the applications for absentee ballots and affidavits of absentee voters in this case.  In any event, to the extent there is any inconsistency between *Davis* and *Langford,* we are compelled to follow the prior precedent, which is *Davis.  See Walker v. Mortham,* 158 F.3d 1177, 1188 (11th Cir.1998) (discussing conflict between lines of precedent and "earliest case" rule).

[17]Smith and Tyree's initial brief argues it was error to admit evidence of approximately 160 ballots that Tyree had witnessed, but that brief does not identify the exhibit or exhibits it is talking about.  The government's brief in response refers to Government Exhibit 21, which consisted of approximately 95 affidavits and was admitted into evidence, and to Government Exhibit 22, which consisted of approximately 75 affidavits and, according to the government, was not introduced into evidence.  The only exhibit Smith and Tyree's reply brief specifically mentions in connection with this issue is Government Exhibit 21.  Accordingly, we discuss only Government Exhibit 21 and the approximately 95 affidavits it involves.

At trial, Cora Stewart reviewed the affidavits comprising Exhibit 21 and identified which of the affidavits she and Tyree had witnessed where she did not see the voter sign his signature. The affidavits were relevant to the conspiracy charge, and the district court did not abuse its discretion in admitting them into evidence.

### E. WHETHER TYREE WAS DENIED HER RIGHT UNDER THE FIFTH AND SIXTH AMENDMENTS TO PRESENT WITNESSES IN HER DEFENSE

Tyree contends that she was denied her constitutional right to present witnesses in her defense when the district court refused to permit her to introduce at trial Burnette Hutton's testimony from the selective prosecution hearing.[18] At the selective prosecution hearing, the government asserted its belief that Hutton would be committing perjury if she testified in accordance with an earlier affidavit, and it asked the magistrate judge who was presiding over the hearing to advise Hutton of her Fifth Amendment rights and to appoint Hutton counsel. The magistrate judge informed Hutton of her Fifth Amendment right not to incriminate herself, and he offered to appoint counsel for her, but Hutton declined the offer and proceeded to testify. During the government's cross-examination, it asked Hutton to give handwriting samples. Smith and Tyree's counsel objected. In response, the magistrate judge again explained Hutton's Fifth Amendment rights to her, and this time he appointed an attorney to advise her. After meeting with that attorney, Hutton decided to exercise her Fifth Amendment right not to testify. The government asked to be allowed to continue its cross-examination, asserting that Hutton had waived her privilege not to testify by answering questions on direct examination. The magistrate judge refused to permit the government to continue questioning Hutton and excused her from the hearing.

At trial, Hutton refused to testify, asserting her Fifth Amendment privilege. Tyree attempted to introduce Hutton's testimony from the selective prosecution hearing that when she had signed the affidavit of Sam Powell, who is her father, she had done so with his permission. The government objected to the admission of Hutton's testimony from the hearing, because it had been unable to fully cross-examine her when she gave that testimony. The district court excluded the testimony under Federal Rule of Evidence 804(b)(1), after agreeing with the government that it had not had a full opportunity to cross-examine Hutton.[19] After

---

[18]The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law," U.S. Const. amend. V., and the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.

[19]Rule 804(b)(1) reads as follows:

> (1) Former testimony. Testimony given as a witness at another hearing of the same or a

reviewing the relevant part of the record, we agree with that premise and with the conclusion.

## F. WHETHER THE JURY INSTRUCTIONS WERE ERRONEOUS

Smith and Tyree argue that the district court's jury charge permitted the jury to convict them without finding, beyond a reasonable doubt, that the voters in whose names ballots were submitted did not consent to the ballots being cast. What we have already held about that not being a necessary element of the § 1973i(c) offense applies as well to the § 1973i(e) offense.[20] *See supra* Part III.B. But Count 1 of the indictment, the conspiracy count, nonetheless did allege that one object of the conspiracy was to commit crimes by voting more than once "by applying for and casting fraudulent absentee ballots in the names of voters without the voters knowledge and consent," in violation of § 1973i(e). And Count 2 charged the defendants with voting more than once by voting the absentee ballots of seven named people, among others, "without the knowledge and consent of said voters," in violation of § 1973i(e). None of the other counts of the indictment alleged the lack of the voters' knowledge or consent.

We will assume for present purposes that because Counts 1 and 2 alleged that Smith and Tyree's actions were done without the knowledge and consent of the voters whose names were used, the defendants were entitled to have the jury instructed that lack of knowledge and consent were required insofar as those two counts were concerned.[21] The court did instruct the jury to that effect, but Smith and Tyree contend that

> different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, [may be admitted into evidence] if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

Fed.R.Evid. 804(b)(1).

[20]We realize that in *United States v. Hogue,* 812 F.2d 1568 (11th Cir.1987), we discussed an indictment for a violation of § 1973i(e) that contained the "without the knowledge and consent of that voter" language. However, nothing in our *Hogue* opinion says that lack of knowledge and consent of the voter is a necessary element of a § 1973i(e) violation. *Hogue* concerned the application of collateral estoppel in a criminal prosecution for endeavoring to obstruct justice, in violation of 18 U.S.C. § 1503. In an earlier prosecution of the same defendant for voting more than once in violation of 42 U.S.C. § 1973i(e), the jury had been instructed that "voting meant marking the ballot of some other voter where the voter had not made a candidate selection or changing the ballot to reflect a selection different from the voter's, all without the expressed or implied consent of the voter." *Id.* at 1576. But we did not hold in *Hogue* that last clause was an element of § 1973i(e), only that the jury in the earlier case did not necessarily have to find that the defendant's actions were taken without consent in order to find that the defendant was not guilty, and thus, collateral estoppel did not apply. *See id.* at 1582-83.

[21]This is just an assumption for present purposes. On a somewhat related point, we have held that the government is not required to prove surplus allegations in an indictment. *See United States v. England,* 480 F.2d 1266, 1269 (5th Cir.1973) ("[T]he Government need not prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential

the court's instruction on Alabama law negated what it told the jury about lack of knowledge and consent.

In its instructions, the district court told the jury: "In order to convict a defendant of the federal offenses charged in this indictment, however, the government also must prove, beyond a reasonable doubt, that the defendant under consideration knowingly and willfully signed the Application for Absentee Ballot without the knowledge and consent of that voter...." The court then gave the instruction on Alabama law that the defendants challenge, stating that "there is no such thing in Alabama as proxy absentee voting" and that "no absentee voter can lawfully grant his or her proxy to another person, granting permission to that other person to cast a voter's absentee ballot for him or for her." That is clearly a correct statement of Alabama law. *See Taylor v. Cox,* 710 So.2d 406 (Ala.1998). The district court then repeated its earlier instruction, this time with respect to the affidavit of absentee voter: "In order to convict a defendant of the federal criminal offenses charged in this indictment, however, the government also must prove, beyond a reasonable doubt, that the defendant under consideration knowingly and willfully signed the voter's name on the affidavit envelope without the knowledge and consent of that voter...."

Next, the court instructed the jury on the individual counts. With respect to Count 2, the court specified that the defendant must have acted "without the consent, or conscious, voluntary, and understanding participation of that other voter." With respect to Count 1, the conspiracy count, the court used the phrase "without the voters' knowledge and consent" when describing § 1973i(e) as a substantive crime underlying the conspiracy. Viewing these instructions in their entirety, we hold that they sufficiently conveyed to the jury that it had to find a lack of consent by the voter, at least as to Counts 1 and 2 (where it was alleged in the indictment).

G. WHETHER THE DISTRICT COURT ERRED IN APPLYING THE SENTENCING GUIDELINES

1. *The Base Offense Level*

Smith and Tyree contend that the district court erred in sentencing them, beginning with the base offense level it used. The applicable section of the Sentencing Guidelines reads as follows:

Section 2H2.1. Obstructing an Election or Registration

(a) Base Offense Level (Apply the greatest):

(1) 18, if the obstruction occurred by use of force or threat of force against person(s) or property; or

---

elements of the crime."); *United States v. Trexler,* 474 F.2d 369, 371-72 (5th Cir.1973) (same).

(2) 12, if the obstruction occurred by forgery, fraud, theft, bribery, deceit, or other means, except as provided in (3) below; or

(3) 6, if the defendant (A) solicited, demanded, accepted, or agreed to accept anything of value to vote, refrain from voting, vote for or against a particular candidate, or register to vote, (B) gave false information to establish eligibility to vote, or (C) voted more than once in a federal election.

U.S.S.G. § 2H2.1. Relying on the revised Presentence Investigation Reports, the district court found that the appropriate base offense level for Smith and Tyree was 12. Tyree and Smith argue, however, that the language of the Guidelines exactly tracks the statutes under which they were convicted and clearly provides that the particular forms of fraud or deceit of which they were convicted warrant a base level of 6.

We agree with the district court that the appropriate base offense level was 12, as provided by § 2H2.1(a)(2). The language of (a)(2) applies in a case where forgery, fraud, theft, bribery, deceit, or other means are used to effect the vote of another person, or the vote another person was entitled to cast. By contrast, the language of (a)(3) addresses an individual who acts unlawfully only with respect to his own vote—an individual who accepts payment to vote, gives false information to establish his own eligibility to vote, or votes more than once in his own name. The offenses for which Smith and Tyree were convicted involved the votes of other individuals, in particular, the forging of other voters' names on applications of absentee ballot and affidavits of absentee voter. The district court did not err in applying a base offense level of 12.

2.    *The Enhancement of Tyree's Offense Level for Abuse of a Position of Trust*

The district court enhanced Tyree's offense level pursuant to § 3B1.3, which provides that:

[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.

U.S.S.G. § 3B1.3.

"[T]he abuse of trust enhancement applies ... where the defendant has abused discretionary authority entrusted to the defendant by the victim...." *United States v. Jolly,* 102 F.3d 46, 48 (2d Cir.1996) (as quoted in *United States v. Garrison,* 133 F.3d 831, 839 (11th Cir.1998)). As we explained in *United States v. Garrison,* 133 F.3d at 837, and *United States v. Barakat,* 130 F.3d 1448, 1454 (11th Cir.1997), "the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense." U.S.S.G. § 3B1.3 commentary at application note 1. The "offense" refers to the offense of conviction. *See Barakat,* 130 F.3d at 1455. "Significant facilitation" in committing the offense of conviction is present when "the person in the position of trust has an advantage in committing the crime

because of that trust and uses that advantage in order to commit the crime." *Id.* at 1455.

Tyree points to the fact that Smith, who did not hold the position of deputy registrar, was convicted of the same offenses as she was. She argues that means her position could not have significantly facilitated the commission of any of her offenses. But the guideline does not require that the position be essential to a defendant's commission of the offense, only that the position have significantly facilitated this particular defendant's commission of it. The fact that another defendant committed the same offense without use or abuse of the defendant's position does not preclude the application of the § 3B1.3 enhancement.

The Presentence Investigation Report recommended application of this enhancement because Tyree's position as a deputy registrar significantly aided her in fraudulently registering Sam Powell "and others," and the district court applied the enhancement for that reason. Tyree was not charged with and convicted of giving, or aiding another to give, false information on a voter registration card. But Tyree was convicted of offenses involving Sam Powell's vote, offenses which were dependent upon his having been registered to vote, and she used her position as deputy registrar to bring that about (fraudulently). Given those facts, we cannot say that the district court erred in finding that Tyree's position significantly aided her commission of an offense for which she was convicted. We reject as specious Tyree's argument that her position as Greene County Deputy Registrar is not a position of public trust. *See United States v. Cole,* 41 F.3d 303, 311 (7th Cir.1994) ("The court did not err ... in finding that as a registrar of voters [the defendant] violate[d] a position of public trust" within the meaning of § 3B1.3.). The district court did not err in applying this enhancement.

3.     *The Enhancement of Smith's Offense Level for Obstruction of Justice*

Referring to Application Note 3 in the Commentary to the Sentencing Guidelines, the district court enhanced Smith's offense level pursuant to § 3C1.1, which provides that:

> If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1. The district court explained that: "[t]he evidence at trial presented or established, beyond a reasonable doubt, that the Defendant Smith influenced Michael Hunter to give a false affidavit concerning material facts." Smith contends the district court erred by failing to make specific findings of fact regarding which material facts Hunter testified falsely about or how Smith was responsible for them.

While it might have been preferable for the district court to identify the material facts about which Hunter testified falsely and for which Smith was responsible, as we have said before, "in the context of the

record ..., detailed findings were not necessary and would have been redundant." *United States v. Hubert,* 138 F.3d 912, 915 (11th Cir.1998); *accord United States v. Diaz,* 190 F.3d 1247, 1256 (11th Cir.1999) (general finding that encompasses all factual predicates of perjury is sufficient). The district court did indicate that its finding in this regard relied upon the evidence presented at trial, and the court expressly adopted the factual statements in the revised Presentence Investigation Report. The addendum to that report, which addressed Smith's objections to the obstruction of justice enhancement, discussed in detail Smith's actions that warranted the enhancement. Moreover, because Smith did not request more specific findings of fact by the district court, "[i]t is too late now to complain in this court." *United States v. Gregg,* 179 F.3d 1312, 1317 (11th Cir.1999) (quoting *United States v. Geffrard,* 87 F.3d 448, 453 (11th Cir.1996)); *accord Hubert,* 138 F.3d at 915.

4.      *The Enhancement of Smith and Tyree's Offense Levels for Their Roles*

The district court enhanced Smith and Tyree's offense levels by four levels pursuant to § 3B1.1(a), because it found that each of them was an "organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). Smith and Tyree contend that there was no evidence their criminal activity, as distinguished from their First Amendment-protected political activity, was extensive, and also complain that the court failed to adequately identify the five participants who were involved in the criminal activity. However, the Presentence Investigation Reports identified the five participants in the criminal activity and their activities, and the district court expressly adopted the report's factual findings. The district court did not err by enhancing Smith and Tyree's sentences for their roles in the offense.

## IV. CONCLUSION

For the foregoing reasons, we affirm Smith's convictions and sentence in all respects;  we reverse Tyree's conviction on Count 12, affirm her convictions on all other counts, and remand her case for the limited purpose of modifying the judgment of conviction and sentence accordingly.